[No. 37880-5-I.  Division One.  July 21, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. DAUN LEON BENNETT, *Appellant.*

*Kelly V. Curtin* and *Nielsen, Broman & Associates;* and *Stephen P. Traylor,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *Breck Williams Marsh, Deputy,* for respondent.

Cox, J. — Daun Leon Bennett challenges his conviction for attempted first degree murder. He claims that his trial attorney provided ineffective assistance of counsel by proposing a self-defense instruction that our Supreme Court disapproved after his trial.[1] We conclude that the jury instructions were sufficient when read as a whole. Therefore counsel's representation was not deficient. Accordingly, we affirm.

On an evening in May 1995, JoLayne Boston arrived at her home to find Bennett, her estranged boyfriend, waiting for her. The two had been involved in a long-term, stormy relationship punctuated by several breakups and reconciliations. Boston realized that Bennett was there that evening because she saw his truck parked in front of the house. She parked her vehicle in front of his, blocking his exit. Boston was carrying a pistol in her purse.

When Boston exited her vehicle, she heard the screen door close and saw Bennett walking off the porch. Boston confronted Bennett about his presence there, insisted that he leave, and threatened to call the police.

At that point, Boston returned to her truck. As she did, Bennett saw the pistol protruding from her purse. He demanded the gun. She refused and entered her vehicle. Bennett tried to reach across her to her purse to seize the weapon. He then placed his knife to her throat and told her that he would slit it unless she gave him the gun. Boston raised her hand to push away the knife. Bennett began stabbing her. He eventually stabbed her 14 times.

[1] *State v. LeFaber*, 128 Wn.2d 896, 913 P.2d 369 (1996).

Boston attempted to defend herself by kicking Bennett, who then pulled her out of the truck by her legs. At that point, her purse fell to the ground as she landed on her feet. Bennett picked up the purse and removed the gun. Boston lunged for the gun but tripped over a board in the driveway. Bennett then shot her in the chest. When she realized that the wound had not completely disabled her, she stood up and ran to her neighbors' house. Someone there called the police.

Meanwhile, a different neighbor heard Boston's screams and went to her house armed with a rifle. He confronted Bennett, who told the neighbor that he had shot and stabbed Boston. The police arrived and took Bennett into custody.

Bennett testified in substantial conformity with the foregoing. But he said that he merely "poked" Boston a few times with the knife to stop her from grabbing the gun. According to him, he pulled her out of the truck, grabbed the gun, and attempted to unload it by cocking the hammer. At that point, Bennett said that Boston grabbed at the gun, which went off and shot her.

The State charged Bennett with one count of attempted first degree murder with a deadly weapon enhancement. A jury found Bennett guilty as charged. Bennett appeals.

### Ineffective Assistance of Counsel

Bennett argues that he received ineffective assistance of counsel. The claim is based on the self-defense instruction his attorney proposed. The invited error doctrine generally forecloses review of an instructional error where the appellant proposed the challenged instruction.[2] But invited error does not bar review of a claim of ineffective assistance of counsel based on such an instruction.[3]

Washington courts use a two-prong test to

---

[2]*State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990).

[3]*State v. Gentry*, 125 Wn.2d 570, 646, 888 P.2d 1105, *cert. denied*, 516 U.S. 843 (1995).

overcome the strong presumption of effectiveness that courts apply to counsel's performance.[4] A defendant must first demonstrate that defense counsel's representation was deficient.[5] "Deficient performance is not shown by matters that go to trial strategy or tactics."[6] The defendant must also show prejudice such that "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different."[7] The defendant must meet both prongs of the test to merit relief.[8]

## A

### Deficient Representation

Bennett argues that his trial counsel's representation was deficient because counsel proposed self-defense instructions that failed to make the law of self-defense clear. He is mistaken.

██ ██ The law of self-defense is well-settled. Recently, our Supreme Court reiterated that "[a] jury may find self-defense on the basis of the defendant's subjective, reasonable belief of imminent harm from the victim."[9] The jury need not find that actual harm was imminent.[10] The jury should instead view the situation from the defendant's point of view and assess the reasonableness of the defendant's actions based on "all the surrounding facts and cir-

---

[4]*State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

[5]*McFarland*, 127 Wn.2d at 334-35.

[6]*State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

[7]*Hendrickson*, 129 Wn.2d at 78.

[8]*State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

[9]*LeFaber*, 128 Wn.2d at 899 (citing *State v. Janes*, 121 Wn.2d 220, 238-39, 850 P.2d 495, 22 A.L.R. 5th 921 (1993); *State v. Allery*, 101 Wn.2d 591, 594-95, 682 P.2d 312 (1984)).

[10]*LeFaber*, 128 Wn.2d at 899 (citing *State v. Theroff*, 95 Wn.2d 385, 390, 622 P.2d 1240 (1980)).

cumstances as they appeared to the defendant."[11] Moreover, "[t]he instructions, read as a whole, must make the relevant legal standard ' " 'manifestly apparent to the average juror.' " ' "[12]

Here, the defense proposed, and the court gave, instructions 13 through 16. All related to self-defense.

We first consider instruction 14 that states:

> It is a defense to a charge of attempted murder that the attempted homicide was justifiable as defined in this instruction.
>
> Attempted homicide is justifiable when committed in the lawful defense of the actor when:
>
> (1) the actor reasonably believed that the person threatened or harmed intended to commit a felony;
>
> (2) *there was imminent danger of such harm being accomplished*; and
>
> (3) the actor employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the actor, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.
>
> The State has the burden of proving beyond a reasonable doubt that the attempted homicide was not justifiable. If you find the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.[13]

Instruction 14 is substantially the same as the instruction that our Supreme Court disapproved in *LeFaber*.[14] There, the trial court gave the following instruction:

> It is a defense to a charge of Murder in the Second Degree,

---

[11]*LeFaber*, 128 Wn.2d at 900.

[12]*LeFaber*, 128 Wn.2d at 900 (citations omitted).

[13](Emphasis added.)

[14]*LeFaber*, 128 Wn.2d at 901.

Manslaughter in the First Degree, and Manslaughter in the Second Degree that the homicide was justifiable as defined in this instruction.

Homicide is justifiable when committed in the lawful defense of the defendant or any person in the defendant's presence or company when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and *there is imminent danger of such harm being accomplished.*

The defendant may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the defendant taking into consideration all the facts and circumstances known to the defendant at the time and prior to the incident. The force employed may not be more than is necessary.

The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable.[15]

When it rejected the foregoing instruction in *LeFaber*, the Supreme Court also referred with disapproval to the corresponding WPIC instruction, 16.02. That instruction states:

Homicide is justifiable when committed in the lawful defense of [the slayer] when:

(1) the slayer reasonably believed that the person slain intended [to inflict death or great personal injury]

(2) *there was imminent danger of such harm being accomplished*; and

(3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to [him], at the time of the incident.[16]

■ The above italicized portions of instruction 14, the

---

[15]*LeFaber*, 128 Wn.2d at 898-99 (emphasis added).

[16]11 WASHINGTON PRACTICE, WASHINGTON PATTERN JURY INSTRUCTIONS 176 (2d ed. 1994) (WPIC 16.02) (italics ours).

*LeFaber* instruction, and WPIC 16.02 all share the same shortcoming. A finding of self-defense does not depend on an objective determination that danger is *actually* imminent. Rather, it is a subjective determination that applies: What danger does the accused *reasonably believe* is imminent? Thus, read in isolation, instruction 14 in this case fails to accurately state the law of self-defense. It creates the possibility that the jury might have arrived at an erroneous conclusion based on an improper statement of the law.[17]

Our inquiry does not end at that instruction. Here, instruction 16 supplements and clarifies the statement of the law of self-defense in instruction 14. Instruction 16 states:

> A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger.
>
> Actual danger is not necessary for an attempted homicide to be justifiable.

Instruction 16 makes clear that *actual* imminent harm is not necessary to show self-defense. Thus, instructions 14 and 16 do not conflict, as Bennett argues. Instruction 14 describes the necessary showing of harm to show lawful self-defense: "there was *imminent danger* of such harm being accomplished . . . ."[18] Instruction 16 makes clear the subjective nature of the inquiry into "imminent danger." *Imminent* danger from the point of view of a defendant is not necessarily the same as *actual* danger. When read together, these two instructions properly state the law of self-defense.[19]

---

[17]*LeFaber*, 128 Wn.2d at 901-03.

[18] (Emphasis added.)

[19]*See State v. Fields*, 87 Wn. App. 57, 940 P.2d 665 (1997); *State v. McLoyd*, 87 Wn. App. 66, 939 P.2d 1255 (1997).

Bennett cites *State v. Aumick*[20] as supplemental authority, apparently for the proposition that reference to other instructions to supply the elements of self-defense is not appropriate in this case. There, our Supreme Court held that the trial court committed reversible error when it omitted the element of intent from the "to convict" instruction that set forth the elements of criminal attempt.[21] Conceding the error, the State argued that other instructions rendered it harmless. Specifically, the State pointed to the instruction describing the elements of attempted first degree rape. That instruction defined felonious entry as "entry 'into a building with the intent to commit a crime against a person or property therein.' "[22] The court rejected the State's argument, noting that a "jury is not required to search other instructions to see if another element should have been included in the instruction defining the crime."[23]

That case is distinguishable. The instruction at issue here is not a "to convict" instruction. It is an instruction on the law of self-defense. As such, it does not purport to be a complete statement of the law of self-defense. In contrast, a "to convict" instruction purports to contain all essential elements of the charged offense. This distinction is expressly recognized in the authorities on which the *Aumick* court relied in stating the principle regarding "to convict" instructions. Those authorities acknowledge that generally, one reads jury instructions as a whole to assess their sufficiency.[24]

---

[20]126 Wn.2d 422, 894 P.2d 1325 (1995).

[21]*Aumick*, 126 Wn.2d at 430-31.

[22]*Aumick*, 126 Wn.2d at 430.

[23]*Aumick*, 126 Wn.2d at 431.

[24]*See State v. Stewart*, 35 Wn. App. 552, 555, 667 P.2d 1139 (1983) (cited in *Aumick*, 126 Wn.2d at 431); *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953) (cited in *Stewart*, 35 Wn. App. at 555).

Bennett also cites *State v. Miller*[25] as supplemental authority. There, the "to convict" instruction defining the crime of conspiracy omitted an essential element. Citing *Aumick*, our Supreme Court reversed the conviction, holding that the instruction failed to contain an essential element.[26]

*Miller* is distinguishable for the same reasons we discussed for distinguishing *Aumick*.

■ We hold that instructions 14 and 16, when read together, are sufficient to properly instruct the jury on the law of self-defense.

Because we hold that instructions 14 and 16 are sufficient statements of the law, we need not reach arguments regarding instructions 13 and 15. It is also unnecessary for us to address the State's argument that Bennett's counsel's performance was not deficient by virtue of proposing an instruction that does not survive analysis under *LeFaber*.

## B

### Prejudice

■ Bennett claims that the instructional defects prejudiced his defense by preventing the jury from fully and fairly considering his theory of the case. As noted above, the test for prejudice from ineffective assistance of counsel is whether "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different."[27] Bennett notes the test for prejudice from an instructional error, citing *State v. Wanrow*[28] for the proposition that such an error is presumed prejudicial.

That case is distinguishable. It involved direct review of the instruction. Here, we are considering a claim of inef-

---

[25]131 Wn.2d 78, 929 P.2d 372 (1997).

[26]*Miller*, 131 Wn.2d at 91.

[27]*Hendrickson*, 129 Wn.2d at 78.

[28]88 Wn.2d 221, 238, 559 P.2d 548 (1977).

fective assistance of counsel. That test requires the defendant to show that counsel's proposal of proper instructions would have, within reasonable probabilities, changed the result of trial.[29]

██ Bennett stabbed Boston 14 times and then shot her. The trial court instructed the jury that to find self-defense, they must determine that Bennett "employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared" to him. This portion of the instruction is identical to the corresponding portion of WPIC 17.02, the standard self-defense instruction. A jury could not rationally find that Bennett confined the force he used to a reasonable amount. Even under Bennett's version of the events, Boston did not threaten to shoot or otherwise harm him.

As the State points out, instruction 17 stated that if the jury determined beyond a reasonable doubt that Bennett was the initial aggressor, his claim of self-defense would fail. The instruction stated,

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor, and that the defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.[30]

Under Bennett's version of the events, Boston was attempting to leave, even though Bennett was insisting that they talk. As she sat in her truck, she placed her hand on the gun. At that point, Bennett said that he removed his knife from his pocket, opened it, and placed it against her throat. He threatened to cut her unless she released the gun.

---

[29]*Hendrickson*, 129 Wn.2d at 78.

[30]*See* 11 WASHINGTON PRACTICE, WASHINGTON PATTERN JURY INSTRUCTIONS 182 (2d ed. 1994) (WPIC 16.04).

Boston's version of the events does not involve her touching her gun.

Under either scenario, Bennett was clearly the initial aggressor. Thus, self-defense was unavailable to him as a defense.

In sum, the allegedly erroneous instructions did not satisfy the prejudice prong of the test for ineffective assistance of counsel. This challenge to the conviction fails.

We affirm the judgment and sentence.

COLEMAN and WEBSTER, JJ., concur.

Review granted at 134 Wn.2d 1010 (1998).