W<small>EBSTER</small> and C<small>OX</small>, JJ., concur.

Reconsideration denied August 21, 1997.

[No. 37349-8-I.   Division One.   July 21, 1997.]

T<small>HE</small> S<small>TATE</small> <small>OF</small> W<small>ASHINGTON</small>, *Respondent,* v. V<small>INCENT</small> L<small>AVELLE</small> F<small>IELDS</small>, *Appellant.*

*Kimberly N. Gordon* of *Washington Appellate Project,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brian M. Mc-Donald, Deputy,* for respondent.

COLEMAN, J. — Vincent Fields unsuccessfully argued at his murder trial that he killed a man in self-defense. The court's jury instructions allowed the erroneous interpretation that a finding of actual imminent danger was necessary for a valid self-defense claim. Thus, the jury may have rejected Fields' self-defense claim even if Fields reasonably believed that he was in danger of great personal injury. Although Fields' attorney proposed a self-defense instruction that suffered the same legal defect as the one given, we hold that the error was not invited because defense counsel also proposed a clarifying instruction that the court refused to give. Because Fields produced sufficient evidence to allow a finding that his fear of harm was reasonable, we hold that the error was prejudicial and reverse and remand Fields' murder conviction.

On November 8, 1994, Scott Holm told his family that he was going to see a man named "Vic." The next morning, Holm's body was discovered wrapped in blankets in the back of an abandoned pickup truck. Holm had been stabbed a number of times and strangled.

The police discovered that Holm had phoned Fields three times on the day he was killed. They also discovered that someone had used Holm's credit card the day after his body was found. Several retail employees identified Fields from a photo montage as having tried to use Holm's credit card. The police then obtained a warrant to search Fields' apartment.

During the search, the police discovered a handgun with one empty chamber in Field's bedroom. They also found a picture depicting a blanket similar to the one in which Holm's body had been wrapped. Recent bloodstains were noticed on the walls and floor. Fields was arrested. He

admitted that Holm had called on November 8 to say that he was coming over, but he claimed that Holm never showed. The State later charged Fields with first degree murder.

At trial, Fields argued that he had killed Holm in self-defense. He testified that when Holm had called on the morning of November 8, 1994, Holm said that he had been "laying low" after being questioned about a murdered woman. Holm told Fields that he had "clean[ed] her clock." An hour later, Holm called again and asked Fields to return some stereo speakers. When Fields said that he had sold the speakers, Holm seemed not to believe him. Holm soon called a third time to say that he was outside Fields' apartment.

Fields further testified that when he went to the door, Holm appeared to be stressed and on drugs. When Fields again explained that he had sold the speakers, Holm shouted obscenities and pulled out a gun. Fields claimed that as they struggled, the gun went off once and fell on the kitchen table. In fear, Fields grabbed a kitchen knife and started swinging. The two wrestled out into the living room and Fields put Holm in a choke hold. When Fields let go, Holm collapsed on the floor in a pool of blood.

Fields wrapped Holm's body in blankets and cleaned up the bloodstains. That night, he left Holm's body in his pickup at an apartment building in Tacoma. Fields admitted that he had used Holm's credit card to purchase new furniture, explaining that Holm had made a mess of his apartment. Although no bullet hole was found in the kitchen, Fields maintained that Holm's gun had discharged during the fight. He claimed that he had thrown away the spent bullet shell and put Holm's gun in the bedroom. Fields denied ever telling the police that Holm had not come to his apartment.

Fields proposed a self-defense jury instruction that stated in part:

Homicide is justifiable . . . when the slayer reasonably believes that the person slain intends to inflict death or to

commit a felony, or to inflict great personal injury, *and there is imminent danger of such harm being accomplished.*

(Emphasis added.) The court modified this proposed instruction as follows:

Homicide is justifiable . . . when:

(1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury;

(2) *there was imminent danger of such harm being accomplished*[.]

(Emphasis added.) *See* WPIC 16.02. Over defense objection, the court refused to submit Fields' other proposed instruction that actual danger is not necessary:

A person is entitled to act on appearances in defending himself, herself, or another, if that person in good faith and on reasonable grounds believe [sic] that he, she, or another is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger.

*Actual danger is not necessary for a homicide to be justifiable.*

(Emphasis added.) *See* WPIC 16.07. Field's attorney unsuccessfully argued that this instruction was necessary to explain that self-defense could be established even if Fields had not been in actual danger after the gun fell out of Holm's hand. The jury convicted Fields of second degree murder.[1]

We first address whether the given self-defense instruction contains an impermissible ambiguity. Fields argues that the trial court's instruction incorrectly states the law. Specifically, he claims that the jury could have interpreted it to require an imminent danger of actual harm in order to accept Fields' self-defense claim. We

---

[1]Fields was also convicted for second-degree theft, possession of methamphetamine, and possession of cocaine with intent to deliver. He has not appealed these convictions.

agree that the misleading instruction allowed this legally erroneous reading.

■■ It is well settled that a finding of actual danger is not necessary to establish self-defense. *State v. Theroff*, 95 Wn.2d 385, 390, 622 P.2d 1240 (1980). The jury must only find that the defendant reasonably believed that he or she was in danger of imminent harm. *State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996). Jury instructions must make this standard "manifestly apparent to the average juror." *State v. Fischer*, 23 Wn. App. 756, 759, 598 P.2d 742, *review denied* 92 Wn.2d 1038 (1979).

The Supreme Court recently held that a self-defense jury instruction similar to the one at issue here failed to clearly enunciate the proper legal standard. *LeFaber*, 128 Wn.2d at 913. The instruction stated in part:

> Homicide is justifiable . . . when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished.

*LeFaber*, 128 Wn.2d at 898-99. The court reversed a murder conviction because an average juror could have read the instruction as requiring a finding of actual imminent harm. *LeFaber*, 128 Wn.2d at 901.

■ In this case, the challenged jury instruction suffers from the same defect as the one invalidated in *LeFaber*. It is perhaps even more misleading because the imminent danger element is numerically and grammatically severed from the requirement that the slayer reasonably believed that the victim intended to inflict injury. The instruction literally allows a finding of self-defense only "when . . . (2) there was imminent danger of such harm being accomplished[.]" Because an average juror could be misled to believe that actual danger is a necessary element of self-defense, we hold that the instruction failed to sufficiently enunciate the correct legal standard.

■ The State argues, however, that because Fields'

proposed self-defense instruction contains the same flaw as the given instruction, his appeal is barred under the invited error doctrine. Although Fields proposed a fatally ambiguous instruction, he also proposed WPIC 16.07 which would have cured the ambiguity by clarifying that actual danger is not an element of self-defense. We hold that Fields' two proposed instructions, read together, would have sufficiently made clear that imminent danger of actual harm was not required. Thus, because the trial court followed the State's recommendation not to give WPIC 16.07, we hold that Fields did not invite the error of which he now complains.

A jury instruction that misstates the law of self-defense is presumed prejudicial. *LeFaber*, 128 Wn.2d at 900. But a defendant may not challenge an instruction on appeal when he or she requested the instruction at trial. *State v, Henderson*, 114 Wn.2d 867, 868, 792 P.2d 514 (1990). This doctrine of invited error precludes the appeal even when the instructional error is of constitutional magnitude. *Henderson*, 114 Wn.2d at 871. The doctrine applies equally when the trial court's instruction contains the same error as the defendant's proposed instruction. *State v. Neher*, 112 Wn.2d 347, 352-53, 771 P.2d 330 (1989).

Read in isolation, the self-defense instruction that Fields proposed contains the same flaw as the instruction adopted by the trial court. That is, both instructions could mislead a jury into believing that a finding of actual imminent harm was necessary. But the sufficiency of jury instructions is tested by reading them as a whole. *LeFaber*, 128 Wn.2d at 900. Fields attempted to eliminate the ambiguity of his proposed self-defense instruction by proposing WPIC 16.07, entitled "Justifiable Homicide—Actual Danger Not Necessary." Viewed together with his proposed self-defense instruction, this language would have clarified that an actual threat of harm was not necessary and thus enabled Fields to argue his theory to the jury. *See State v. McLoyd*, 87 Wn. App. 66, 939 P.2d 1255 (1997); *see also State v. Bennett*, 87 Wn. App. 73, 940 P.2d 299

64

(1997). The State, by objecting to Fields' proposed WPIC 16.07 instruction, is the party that invited the error. The invited error doctrine does not preclude review in this situation.

██ ██ The State next argues that we should decline to review Fields' claim because the alleged constitutional error is not "manifest." Instructional errors that are not challenged at trial may be reviewed on appeal when they involve "manifest error affecting a constitutional right." RAP 2.5(a). The defendant must make a plausible showing that the error had "practical and identifiable consequences" on the trial. *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). Where there is evidence of self-defense, a flawed self-defense instruction can affect the defendant's constitutional right to a fair trial. *See State v. Fesser*, 23 Wn. App. 422, 424, 595 P.2d 955, *review denied*, 92 Wn.2d 1030 (1979). Because the evidence would support a finding that Fields reasonably but mistakenly believed that he was in danger, we reverse.

In *Theroff*, upon which the State relies, the Supreme Court found that a self-defense instruction that failed to incorporate the subjective, reasonable belief standard was erroneous. 95 Wn.2d at 390-91. But the defendant's defense was that he had accidentally shot and killed his victim. *State v. Theroff*, 25 Wn. App. 590, 592-93, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385 (1980). Because there was no evidence of self-defense, the Supreme Court saw no reason to consider the effect of the erroneous self-defense instruction. *Theroff*, 95 Wn.2d at 391.

██ By contrast, Fields' entire theory of the case was self-defense. And he produced evidence to support that theory. Holm was upset that Fields had sold his speakers. Fields knew Holm had recently "clean[ed a woman's] clock" and was "laying low" to avoid the murder investigation. Fields thought that Holm was on drugs when he came to his apartment. Moreover, Holm allegedly fired his gun during the fight in Fields' kitchen. A jury may have concluded that Fields was in no actual danger after Holm

dropped the gun on the kitchen table. But the instructions could have been interpreted to preclude a finding of self-defense even if Field's reasonably believed that he was in danger. Because Fields produced sufficient evidence to support a finding that his fear of imminent harm was reasonable, the jury instructions' flaws had prejudicial and constitutional ramifications. *See State v. Hutchinson*, 85 Wn. App. 726, 733, 934 P.2d 1201 (1997). Although much of the evidence concerning the danger came from Fields' subjective perspective, it does not follow that the erroneous instruction had no possible consequences on the jury's verdict, as the State suggests.

In sum, we hold that the trial court's instructions erroneously permitted an incorrect reading of the law and denied Fields' right to a fair trial. Without Fields' proposed instruction that actual harm is not necessary, the jury might have understood a self-defense claim to require a showing that actual harm was imminent. Field's did not invite this error. Rather, the fatal ambiguity resulted from the State's successful objection to the clarifying instruction that Fields proposed. Because the State has failed to overcome the presumption that jury instructions misstating the law on self-defense are prejudicial, we reverse Fields' conviction for second-degree murder and remand for a new trial.

Reversed and remanded.

WEBSTER and Cox, JJ., concur.

Reconsideration denied August 21, 1997.

Review granted at 134 Wn.2d 1010 (1998).