[No. 37409-5-I.    Division One.    July 21, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. RAYMOND
D. McLOYD, *Appellant.*

*Kimberly N. Gordon* and *Richard R. Tassano* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Gregory E. Jackson, Deputy,* for respondent.

COLEMAN, J. — Raymond McLoyd appeals his conviction for second degree murder, arguing that the self-defense instruction erroneously required the jury to consider whether he was in danger of actual imminent harm rather than whether he reasonably believed that harm was imminent. The Supreme Court recently held that because a similar self-defense instruction was ambigu-

ous, the jury instructions failed to properly state the applicable law. *State v. LeFaber*, 128 Wn.2d 896, 913 P.2d 369 (1996); *see State v. Hutchinson*, 85 Wn. App. 726, 934 P.2d 1201 (1997). Here, however, another instruction explicitly provided that actual imminent harm was not necessary. We therefore hold that the instructions read in their entirety properly state the law. We affirm.

## FACTS

McLoyd was charged by amended information with murdering Charles Blutchford in the first and second-degree. The second-degree murder charge was based on an underlying felony of second-degree assault.

McLoyd testified that he has a $1,500 stereo system in his car. As he waited at the intersection of Pacific Highway South and 204th Street, he heard "three guys talking about car jacking [him] for [his] system." The teenagers were about 10 feet away from his car and kept talking about stealing his stereo, instructing McLoyd to come out of his car. McLoyd leaned out of his car, and the boys ran. Two boys picked up wooden boards and gestured for McLoyd to come out of his car. The third teenager, Blutchford, "looked like he was coming toward [McLoyd's] car with his hand down his pants." McLoyd thought Blutchford was reaching for a gun so McLoyd fired one shot, attempting to shoot him in the arm. Blutchford, who had no weapon, died.

Defense counsel requested WPIC 16.02, a self defense instruction for homicide cases. The instruction provided in relevant part:

Homicide is justifiable when committed in the lawful defense of the slayer when:

(1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury;

(2) *there was imminent danger of such harm being accomplished*; and

(3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

(Italics ours.) McLoyd proposed another instruction, based on WPIC 16.07, that the court also provided:

A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger.

*Actual danger is not necessary for a homicide to be justifiable.*

(Emphasis added.)

McLoyd was found guilty of second-degree murder and sentenced within the standard range.

## ANALYSIS

The critical issue on appeal is whether the trial court erred in giving the justifiable homicide jury instruction because it misstated the law on self-defense. McLoyd argues that the trial court erred because the standard is whether the defendant reasonably believed that there was imminent harm, not whether there was in fact imminent harm. The State argues that under the invited error doctrine, McLoyd cannot challenge an instruction on appeal that he proposed at trial. Alternatively, the State argues that the instructions read as a whole properly instructed the jury on the law of self-defense.

■ We initially consider whether the invited error doctrine precludes review. That doctrine prohibits a party from creating an error at trial and then complaining of it on appeal. The doctrine applies even when the error is of constitutional magnitude. *See In re Griffith*, 102 Wn.2d 100, 102, 683 P.2d 194 (1984).

McLoyd claims that under *LeFaber*, manifest constitutional errors can, as a matter of right, be raised for the first time on appeal even if they are invited. This assertion is false. *See Griffith*, 102 Wn.2d at 101. In *LeFaber*, the record was unclear whether defense counsel merely failed to object to the instruction or whether he proposed a similar instruction. *LeFaber*, 128 Wn.2d at 904 n.1 (Alexander, J., dissenting). The distinction is critical because failing to except to an instruction does not constitute invited error. Therefore, review was predicated on this ambiguity, not on a newly created exception to the invited error doctrine.

Here, defense counsel invited the error, specifically proposing an instruction based on WPIC 16.02 over the State's objection. Defense counsel also, however, proposed a clarifying instruction. Under these circumstances, the invited error doctrine does not preclude review. *See State v. Fields*, 87 Wn. App. 57, 940 P.2d 665 (1997).

■ The Supreme Court recently addressed the constitutionality of a similar jury instruction in *LeFaber*, 128 Wn.2d at 902-03. In a 5-4 majority, the court noted that the standard for self-defense was well settled: a jury may find self-defense based on the defendant's subjective, reasonable belief of imminent harm; actual imminent harm is not necessary. *LeFaber*, 128 Wn.2d at 899. The instruction at issue in *LeFaber* provided:

> Homicide is justifiable when committed in the lawful defense of the defendant or any person in the defendant's presence or company when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished.

*LeFaber*, 128 Wn.2d at 898-99. The *LeFaber* court reasoned that a juror could read the instruction to arrive at the proper law, finding that the "reasonably believes" language modified the "imminent danger" clause since the clauses are joined by the word "and." On the other hand,

the court noted that a proper grammatical reading could also lead a juror to believe that the "imminent danger" clause is severed from the "reasonably believes" language. *LeFaber*, 128 Wn.2d at 902-03. Since the instruction as a whole offered no further guidance, the court reversed LeFaber's conviction. *LeFaber*, 128 Wn.2d at 903.

The State argues that unlike *LeFaber*, here the jury instructions read as a whole accurately informed the jury on the law of self-defense. Instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury on the applicable law. *Flint v. Hart*, 82 Wn. App. 209, 223, 917 P.2d 590 (1996). If the jury instructions read as a whole are still ambiguous, the reviewing court cannot conclude that the jury followed the constitutional rather than the unconstitutional interpretation. *See Sandstrom v. Montana*, 442 U.S. 510, 526, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). The jury is presumed to read the court's instructions as a whole, and all instructions should be read in light of all other instructions. *State v. Alford*, 25 Wn. App. 661, 670, 611 P.2d 1268 (1980), *aff'd*, *State v. Claborn*, 95 Wn.2d 629, 628 P.2d 467 (1981). The jury is also to presume that each instruction has meaning.

McLoyd argues that the instructions are ambiguous because the jury was given conflicting laws on self-defense and this court cannot determine which instruction was followed. We disagree. We believe that after reading WPIC 16.02 alone, the jury is left with an ambiguity: Is danger of imminent harm viewed objectively or from the perspective of the defendant? While WPIC 16.02 could be interpreted as requiring actual imminent danger, WPIC 16.07 explicitly informed the jury that a person was entitled to act on appearances and that actual danger was not necessary. Therefore, even if a juror were inclined to believe that actual imminent harm was required after reading WPIC 16.02, no juror could believe this after reading WPIC 16.07. Any alternative reading would render WPIC

16.07 superfluous. *See State v. Bennett,* 87 Wn. App. 73, 940 P.2d 299 (1997).

We recognize that WPIC 16.02 is grammatically more problematic than the instruction in *LeFaber. See State v. LeFaber,* 128 Wn.2d 896, 902, 913 P.2d 369 (1996). But the distinction is that in *LeFaber,* no "further guidance regarding the imminent harm finding or the reasonableness standard" was provided. *LeFaber,* 128 Wn.2d at 903.

We further note that the instructions permitted the defense to argue his theory of the case. Defense counsel stated in his closing, "even if [McLoyd] misperceived the threat, if it turns out later that he wasn't under as much threat as he thought he was, that's not relevant. What is relevant is what his state of mind was at the time that he shot." The State also argued the correct standard, emphasizing that a person acting in self-defense must "reasonably believe that they are threatened." Significantly, the State never implied that the threat must be actual. We therefore hold that the instructions read in their entirety properly stated the law and enabled the parties to argue their theories of the case.

■ McLoyd also argues that a death resulting from an assault cannot be felony murder or murder in the second-degree under the merger doctrine. He claims that the rule also violates the Sentencing Reform Act and the state and federal constitutions. The Supreme Court has repeatedly rejected these arguments. *State v. Crane,* 116 Wn.2d 315, 333, 804 P.2d 10, *cert. denied,* 501 U.S. 1237 (1991); *State v. Wanrow,* 91 Wn.2d 301, 310-11, 588 P.2d 1320 (1978); *State v. Thompson,* 88 Wn.2d 13, 17, 558 P.2d 202 (1977); *State v. Harris,* 69 Wn.2d 928, 932, 421 P.2d 662 (1966). If they are to be reconsidered, the Supreme Court must do so.

Affirmed.

WEBSTER and Cox, JJ., concur.

Review granted at 134 Wn.2d 1010 (1998).