[Nos. 38133-4-I; 40395-8-I. Division One. April 6, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS
WILLIAM MEGGYESY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR
HEGGINS, JR., *Appellant*.

*Lenell R. Nussbaum*, for appellant Meggyesy.

*Eric J. Nielsen* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant Heggins.

*James H. Krider, Prosecuting Attorney for Snohomish County*, and *Seth Aaron Fine, Deputy*; and *Norm Maleng, Prosecuting Attorney for King County*, and *Lee D. Yates, Deputy*, for respondent.

Cox, J. — Arthur Heggins and Thomas Meggyesy challenge the giving of standard WPIC "to convict" jury instructions used in their respective trials. Each contends the trial court erred by instructing the jury that if it found that the State had proved beyond a reasonable doubt all elements of the charged crime, then it had "a duty to return a verdict of guilty." We hold that neither the federal nor the state constitution precludes such an instruction. Accordingly, we affirm.

The State charged Heggins with first degree burglary. The charge arose from a July 1996 police response to a 911 call from Andrea Roland. She complained of an assault and breakin by Heggins.

At trial, Roland testified that she had been involved in a romantic relationship with Heggins. After she attempted to break off the relationship, Heggins came to her home, pushed his way in, shoved her to the floor, and left. Heggins denied the accusation and testified to a different version of events.

The court gave a standard "to convict" instruction, and the jury found him guilty as charged.

Tom Meggyesy was involved in a dispute with Jermaine Holliday, a next door neighbor. The dispute escalated to the point that Meggyesy confronted Holliday with a gun and shot him. Holliday lost a kidney, but lived.

The State charged Meggyesy with first degree assault with a deadly weapon. At trial, Meggyesy testified that Hol-

liday had threatened him shortly before the shooting. He also claimed that he had shown Holliday the gun, and Holliday then rushed at him.

The court gave a standard "to convict" instruction to the jury, and it found Meggyesy guilty as charged.

## Jury Instruction

In both trials, the trial court gave a jury instruction based on the WASHINGTON PATTERN JURY INSTRUCTION: CRIMINAL (WPIC) "to convict" instruction. Both instructions stated, in relevant part:

> To convict the defendant of the crime of [charged crime], each of the following elements of the crime must be proved beyond a reasonable doubt: . . .

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, *then it will be your duty to return a verdict of guilty.*

> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.[1]

Meggyesy and Heggins both argue on appeal that these instructions violated their right to trial by jury because the instructions *required* the juries to convict if they found that the State proved all of the elements of the charged crimes. They assert that a proper instruction would have informed the jury that it *may* convict if the State proved the elements of the crime.

For purposes of our review, the only distinction between the two consolidated cases is that Meggyesy failed to object below to the instruction while Heggins did object. Predictably, the State argues that we should not review Meggyesy's claim of instructional error because it is not a "manifest error affecting a constitutional right."[2]

■ We need not reach the "manifest error" issue.

---

[1](Emphasis added.) *See* WPIC 35.04 and WPIC 60.02.

[2]RAP 2.5(a).

Because these cases are consolidated and there is no basis for distinguishing between them for purposes of our analysis, we exercise our discretion and consider Meggyesy's claim of error together with Heggins'.[3]

 Jury instructions are sufficient if they are not misleading, permit the parties to argue their cases, and properly inform the jury of the applicable law when read as a whole.[4] Appellants assert that both the federal and state constitutions prohibit the challenged jury instruction language. We disagree and hold that neither constitution prohibits the language the appellants challenge.

Appellants' reliance on the federal constitution to support their challenge is misplaced. They fail to cite a single federal case where a court has reversed a "to convict" instruction of the type before us on the basis of a claimed constitutional violation.

We conclude from our review of the relevant case authority that the Supreme Court has never considered this issue. The circuit courts that have considered this issue have distinguished between two categories of cases. The first category includes cases in which the trial judge refused to give an instruction informing the jury that it has the power to acquit against the evidence.[5] The courts have uniformly affirmed refusals to give such instructions. The second category includes cases where the language of a given instruction effectively directed a verdict of guilty.[6] In these cases,

---

[3]*See* RAP 1.2(c) ("The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice . . . .").

[4]*Brown v. Spokane County Fire Protection Dist. No. 1*, 100 Wn.2d 188, 194, 668 P.2d 571 (1983).

[5]*United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996) ("While juries have the power to ignore the law in their verdicts, courts have no obligation to tell them they may do so. It appears that every circuit that has considered this issue agrees."); *United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir. 1991); *United States v. Krzyske*, 836 F.2d 1013 (6th Cir.), *cert. denied*, 488 U.S. 832 (1988).

[6]*See United States v. Garaway*, 425 F.2d 185 (9th Cir. 1970) (trial court's instruction to jury that it must return a verdict of guilty for the charge of refusing induction into the armed services during the Vietnam War where the evidence was undisputed was erroneous. The per curiam decision based its result on

the courts have reversed because the challenged instructions invaded the province of the jury.[7]

The instructions at issue here do not fall squarely within the second category. The appellants are in effect asking the court to require an instruction notifying the jury of its power to acquit against the evidence.

First, the instructions clearly directed the jury to consider the evidence and to determine whether the State had proven, beyond a reasonable doubt, each element of the charged crime. Thus, unlike the *Garaway* case, neither trial court here invaded the province of the jury. Likewise, neither court either directed a verdict or expressed an opinion as to the accused's guilt.

Second, as stated in *Edwards*, the law among the circuit courts is clear that an accused is not entitled to a jury nullification instruction. This is so notwithstanding the courts' recognition that juries have the power to ignore the law in reaching their verdicts. Appellants argue here that their request for an instruction that the jury "may" convict on the evidence (but need not do so) should be distinguished from a request for an instruction on jury nullification. We discern no difference in practical effect between the instruction appellants requested and one expressly permitting

---

the reasoning that the instruction invaded the province of the jury, was contrary to the rule that a judge may not direct a verdict in a criminal case, and was an impermissible expression by the judge of the defendant's guilt.); *United States v. Bejar-Matrecios*, 618 F.2d 81 (9th Cir. 1980) (holding that the instructions taken together probably did not divest the jury of its power to acquit where the court instructed the jury that it had a duty to convict if it believed beyond a reasonable doubt that the defendant was guilty. In dicta, the opinion also stated that trial courts should avoid use of language suggesting to the jury that it is obliged to return a guilty verdict).

[7] In *Garaway*, the evidence supporting the criminal charge was undisputed. The court gave the following instruction: "I, therefore, instruct you it is your duty as jurors to return a verdict of guilty. You may consider this matter and you may disregard my instructions, but I am instructing you as a matter of law that it is your duty to return a verdict of guilty as charged in the indictment." 425 F.2d at 185.

"jury nullification," as those words are generally understood.[8]

The appellants further argue that several features of the criminal justice system show that the jury has no duty to convict when it determines, beyond a reasonable doubt, that the State has proven all elements of a criminal charge. While we recognize the existence of these features, they do not compel the conclusion that the challenged instructions misstated the law.

The appellants first point to the jury's power to acquit against the evidence. This is an inherent feature of the use of general verdicts.[9] But the power to acquit does not require any instruction telling the jury that it may do so.[10]

Appellants also argue that the court has no power to direct a verdict. Of course, the instructions before us do not direct a verdict.[11] But even if they did, we see no connection between the court's lack of power to direct a verdict and informing the jury that it may acquit against the evidence.

Lastly, the appellants urge that the court has no power to coerce a jury. There is no issue of coercion in the cases before us. But even if there were, there is no connection

---

[8]Andrew D. Leipold, *Rethinking Jury Nullification*, 82 VA. L. REV. 253 (1996) ("Nullification occurs when the defendant's guilt is clear beyond a reasonable doubt, but the jury, based on its own sense of justice or fairness, decides to acquit.").

[9]The Ninth Circuit Court of Appeals stated in *United States v. Simpson*, 460 F.2d 515, 519 (9th Cir. 1972): "[A]s long as general verdicts are rendered in criminal cases, certain verdicts that may be reasonably thought to rest upon the juror's rejection of the law will occur. They cannot be detected, since the courts 'cannot search the minds of the jurors to find the basis upon which they judge.' . . . We acknowledge the truth that all such verdicts, especially when viewed in hindsight, cannot reasonably be said to have been undesirable." (quoting *United States v. Moylan*, 417 F.2d 1002, 1006 (4th Cir. 1969), *cert. denied*, 397 U.S. 910 (1970)). *See also State v. Primrose*, 32 Wn. App. 1, 4, 645 P.2d 714 (1982); *State v. Salazar*, 59 Wn. App. 202, 211, 796 P.2d 773 (1990).

[10]*Powell*, 955 F.2d at 1213.

[11]Likewise, there is no issue here of infringement of the Fifth and Sixth Amendment rights to have a jury apply the law to the facts of the case, not merely to find specific facts. *United States v. Gaudin*, 515 U.S. 506, 513, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995).

between the lack of the power to coerce a jury and requiring an instruction that states the jury may acquit against the evidence.

In short, the federal constitutional right to trial by jury is not implicated by the instructions before us. The instructions did not misstate the law.

Appellants' arguments based on the state constitution fare no better. As to certain issues, our state constitution provides broader protection than does the federal constitution.[12] We address an argument based on the state constitution only where the claimant sufficiently briefs the *Gunwall* factors.[13] Appellants have done so here.

Under *Gunwall*, we are guided in deciding whether to conduct independent analysis under the state constitution based on six factors: 1) the language of the Washington Constitution, 2) differences between the state and federal language; 3) constitutional history; 4) preexisting state law; 5) structural differences; and 6) matters of particular state or local concern.

The first *Gunwall* criterion, the language of the state constitution, is neutral in this case. Article I, section 21 provides in pertinent part, that "[t]he right of trial by jury shall remain inviolate . . . ." Article I, section 22 (amend. 10) provides in pertinent part that "[i]n criminal prosecutions the accused shall have the right to . . . have a speedy public trial by an impartial jury . . . ." Nothing in the language of these constitutional provisions addresses the question presented.

The second *Gunwall* criterion, comparison of the state and federal constitutional language, is also neutral on the question. The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and

---

[12]*State v. Gunwall*, 106 Wn.2d 54, 59, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

[13]*State v. Brown*, 132 Wn.2d 529, 594-95, 940 P.2d 546 (1997), *cert. denied*, 118 S. Ct. 1192 (1998).

district wherein the crime shall have been committed
. . . ." Our Supreme Court has held that this language is
substantially similar to article I, section 22.[14]

Appellants contend that it is significant that the Washington Constitution contains the language in article I, section 21, which the federal constitution does not. They rely for this argument on *City of Pasco v. Mace*.[15] But that case is inapposite. It relied on language in article I, section 21 that specifically addressed the right to a jury trial in courts not of record. There is no specific language in article I, section 21 that addresses the question presented by the appellants here.

With respect to the third *Gunwall* factor, state constitutional history, the appellants' argument is not persuasive. The appellants note that Washington's constitution is based on other state constitutions, not the federal Bill of Rights. But they make no argument regarding the specific issue before the court. In addition, our Supreme Court has held that the third *Gunwall* factor does not support an argument that the state constitution provides a broader right to trial by jury than does the federal right.[16]

Analysis of the fourth *Gunwall* factor, preexisting state law, does not aid the appellants. In *Sofie v. Fibreboard Corp.*,[17] our Supreme Court held that article I, section 21 of the state constitution preserved the scope of the right to trial by jury as it existed at the time the state constitution was adopted. But the appellants cite no preconstitutional case that establishes a prohibition against the challenged instructional language.

Appellants rely heavily on *Leonard v. Territory*[18] to argue that under preconstitutional common law, criminal defend-

---

[14]*Brown*, 132 Wn.2d at 595.

[15]98 Wn.2d 87, 97, 653 P.2d 618 (1982) (holding that defendant was entitled to trial by jury on misdemeanor charge).

[16]*Brown*, 132 Wn.2d at 596.

[17]112 Wn.2d 636, 645, 771 P.2d 711, 780 P.2d 260 (1989).

[18]2 Wash. Terr. 381, 7 P. 872 (1885).

ants were entitled to an instruction that the jury "may" convict if the State proves its case. But the court in that case did not address the issue now before us. Rather, the court there simply quoted the relevant instruction and proceeded to reject it on a different basis.[19] The appellants fail to point to any other preconstitutional case or state constitutional history to support their argument that they are entitled to an instruction that expressly grants the jury discretion to convict when the State has met, beyond a reasonable doubt, its burden of proof.

To the contrary, a case decided soon after the adoption of the state constitution supports the opposite conclusion. In *State v. Wilson*,[20] the state Supreme Court came as close as it has to approving an instruction similar to the ones the appellants challenge in this case. While the issue there was whether the court's "to convict" instruction was proper where it did not list all the necessary elements, the court stated that

> it clearly appears that all the court intended to say was that if they found from the evidence that all the acts necessary to constitute the crime had been committed by the defendant, the law made it their duty to find him guilty.[21]

The State correctly concedes here that the fifth *Gunwall* factor, the differences in the structures of the federal and state constitutions, always supports independent analysis.[22]

The sixth *Gunwall* factor requires consideration of matters of state or local concern. But the appellants point to no particular local or state concern regarding the propriety of an instruction to the jury to find the defendant guilty if the State has proven, beyond a reasonable doubt, all the elements of a crime.

We have considered the appellants' argument and

---

[19]2 Wash. Terr. at 400.

[20]9 Wash. 16, 36 P. 967 (1894).

[21]9 Wash. at 21.

[22]*See State v. Ortiz*, 119 Wn.2d 294, 303, 831 P.2d 1060 (1992).

conclude that the *Gunwall* analysis does not support independent analysis under the state constitution with respect to the issue raised. There is no independent state constitutional basis to invalidate the challenged instructions.

The appellants also argue that our Supreme Court's discussion of the roles of the judge and jury in *Sofie* support their challenge to the instructions here. We disagree.

First, *Sofie* dealt with the right to trial by jury in a civil case. These are criminal cases before us, and we see no reason why statements in a civil case bear on the rights at issue here. Second, the discussion in *Sofie* does not suggest a different division of labor between the judge and jury than we have already discussed.[23] It is the jury's responsibility to apply the law to the facts. *Sofie* does not suggest otherwise.

The State points to article IV, section 16 of the Washington Constitution, which states that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, *but shall declare the law*."[24] The italicized portion of this constitutional provision makes clear that the judge, not the jury, determines the law. The provision is inconsistent with appellants' argument that the jury should be instructed that it may acquit even where it finds that the State has proven, beyond a reasonable doubt, all of the elements of the charged crime.

The appellants finally point to an Indiana case to support their argument.[25] But the State correctly argues that the Indiana case is inapposite because the Indiana Constitution, in contrast to the Washington Constitution, requires the jury to determine the law.[26] The State also cites cases in

---

[23]112 Wn.2d at 645-46.

[24](Emphasis added.)

[25]*See Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416 (1967).

[26]*Pritchard*, 230 N.E.2d at 417 (citing Ind. Const. art. 1, § 19). *See also Moylan*, 417 F.2d at 1007 n.17.

other states where courts have upheld "duty to convict" instructions similar to those at issue here.[27]

■ Meggyesy also argues that the "to convict" instruction is defective because it does not mention self-defense. Our Supreme Court addressed this issue in *State v. Hoffman*,[28] holding that the court need not include self-defense in the "to convict" instruction as long as the instructions as a whole properly instruct the jury on the applicable law. Instructions 12 through 16 state the law on self-defense.

In his reply brief, Meggyesy contends that *Hoffman* has been overruled by *State v. Smith*[29] and *State v. Aumick*.[30] In both of those cases, the court held that "to convict" instructions were defective because they omitted elements of the charged crimes. Neither case dealt with the issue presented here: whether a "to convict" instruction must include mention of a defense the State has the burden of disproving. Meggyesy makes no argument and cites no authority to show that the holdings of *Smith* and *Aumick* necessarily extend to the situation before us.

Meggyesy finally contends that the self-defense and "to convict" instructions are irreconcilable. In *State v. Studd*,[31] the court held that irreconcilable instructions on a material issue are erroneous. *Studd* is distinguishable.[32]

In *Studd*, the court concluded that the instructions given in that case were completely contradictory. One instruction

---

[27]*See, e.g., Kuenzel v. State*, 577 So. 2d 474, 516-17 (Ala. Crim. App. 1990), *aff'd*, 577 So. 2d 531 (Ala.), *cert. denied*, 502 U.S. 886 (1991); *Farina v. United States*, 622 A.2d 50, 60 n.18 (D.C. 1993).

[28]116 Wn.2d 51, 109, 804 P.2d 577 (1991).

[29]131 Wn.2d 258, 930 P.2d 917 (1997) ("to convict" instruction described the wrong crime).

[30]126 Wn.2d 422, 894 P.2d 1325 (1995) ("to convict" instruction omitted element of intent).

[31]87 Wn. App. 385, 389, 942 P.2d 985 (1997), *review granted*, 134 Wn.2d 1010 (1998).

[32]In addition, we reached a different conclusion regarding the same instructions in *State v. McLoyd*, 87 Wn. App. 66, 939 P.2d 1255 (1997), *review granted*, 134 Wn.2d 1010 (1998).

required "imminent danger of . . . harm" for justifiable homicide, while the other stated that "[a]ctual danger is not necessary for a homicide to be justifiable."[33] In this case, the court first informed the jury that it had a duty to convict if the State proved the elements of the charged crime. It also instructed the jury that if the State was unable to prove the absence of self-defense, the jury must acquit Meggyesy. The second of these instructions supplemented the first. The instructions are not erroneous.

### Sentence Enhancement

In Meggyesy's case, the jury found, by special verdict, that Meggyesy was armed with a deadly weapon. The trial court sentenced Meggyesy at the low end of the standard range, as modified by a firearm enhancement under RCW 9.94A.310(3).

Meggyesy contends that the trial court erred by imposing a sentence enhancement based on the fact that he was armed with a *firearm* during commission of his crime, where the State pleaded and the jury found that he was armed with a *deadly weapon*. He argues that because the pleadings and special verdict form did not distinguish between firearms and deadly weapons other than firearms, there was no specific finding to support an enhancement under either RCW 9.94A.310(3)[34] or 9.94A.310(4).[35] We disagree.

The State raises a preliminary issue. It contends that because Meggyesy expressly concurred with the standard range calculated by the State and adopted by the trial court, the invited error doctrine precludes Meggyesy from chal-

---

[33]87 Wn. App. at 387-88.

[34]"The following additional times shall be added to the presumptive sentence for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010."

[35]"The following additional times shall be added to the presumptive sentence for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a deadly weapon as defined in this chapter other than a firearm as defined in RCW 9.41.010."

lenging on appeal the application of the enhancement. We disagree.

■ This court has applied the invited error doctrine where a party's counsel stated during a hearing that he agreed with the State that the trial court properly awarded child support payments as restitution.[36] The appellant was therefore precluded from arguing on appeal that the court had no statutory authority for requiring him to pay child support as restitution. But here, Meggyesy's statements to the trial court below were not so specific. Meggyesy did not invite the particular error that he raises on appeal. He simply agreed to the range calculated by the State, after the court pointed out that Meggyesy's calculation of the range was slightly different. There was no specific mention of the firearm enhancement.

The State also cites *State v. Cooper.*[37] But in that case, the court held that Cooper waived his right to argue that his sentences should not be served consecutively by indicating in his plea bargain that he would recommend to the court that the sentences be served consecutively.[38] Here, Meggyesy made no specific agreement regarding sentencing under the firearm enhancement statute.

■ In any event, we conclude that the trial court did not err by sentencing Meggyesy under the firearm enhancement statute. This issue raises a question of law, which we review de novo.[39]

RCW 9.94A.125 provides that:

> In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a *deadly weapon* at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused or an accomplice was armed with a

---

[36]*State v. Young*, 63 Wn. App. 324, 330, 818 P.2d 1375 (1991).

[37]63 Wn. App. 8, 816 P.2d 734 (1991).

[38]63 Wn. App. at 14.

[39]*In re Electric Lightwave, Inc.*, 123 Wn.2d 530, 536, 869 P.2d 1045 (1994).

deadly weapon at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.[40]

The statute goes on to define a deadly weapon. The definition includes "any dirk, dagger, pistol, revolver, *or any other firearm* . . ."[41]

Before 1995, RCW 9.94A.310(3) provided for a sentence enhancement for crimes involving a participant armed with a deadly weapon. In 1995, the Legislature amended the statute.[42] Under the amendment, different enhancements were required depending on whether the accused was armed with a firearm or any other deadly weapon.[43] The Legislature did not amend RCW 9.94A.125. Nor did it enact a similar provision requiring a specific finding for firearms.[44]

Meggyesy essentially contends that the lack of a special verdict regarding a firearm violates his right to due process. First, he argues that the charging document was insufficient to justify the sentence enhancement based on the involvement of a firearm.[45] Second, he argues, in essence, that it violates his right to trial by jury. He contends that the State must prove, beyond a reasonable doubt, every essential element of an allegation that triggers an enhanced penalty.

 The State correctly points out that there is nothing in the statutes requiring a specific finding regarding a firearm. It contends that once a finding regarding a deadly weapon is made, it is up to the sentencing court to

[40](Emphasis added.)

[41](Emphasis added.)

[42]Laws of 1995, ch. 129, § 2.

[43]RCW 9.94A.310(3), (4).

[44]*See* Laws of 1995, ch. 129.

[45]*See State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991).

determine the appropriate enhancement. On the basis of *State v. Thorne*[46] we agree with the State.

In *Thorne*, the Supreme Court rejected the argument that the charging document was insufficient to support a sentence enhancement based on the Persistent Offender Accountability Act because it did not allege Thorne's past offenses. The court stated that the charging document must allege all the elements of the charged crime.[47] But because the Act deals with sentencing and does not create a new crime, the court concluded that the State was not required to include allegations regarding the defendant's criminal history in the charging document.[48]

Meggyesy cites *State v. Bright*[49] for the proposition that a sentencing enhancement must be pleaded and proven and is subject to jury determination. But that case does not support his argument. Sentencing was not at issue in *Bright*.

The *Thorne* court also rejected Meggyesy's second argument. It held, following the United States Supreme Court, that a defendant does not have a constitutional right to a jury determination as to the appropriate sentence to be imposed even where the sentence turns on specific findings of fact.[50] The court specifically stated that the statutory requirement of a special verdict regarding a deadly weapon is not constitutionally required.[51] Rather, if the deadly weapon finding is a sentencing factor, the sentencing court may make the required finding.[52]

---

[46]129 Wn.2d 736, 921 P.2d 514 (1996).

[47]*Thorne*, 129 Wn.2d at 779.

[48]*Id.*

[49]129 Wn.2d 257, 916 P.2d 922 (1996).

[50]*Thorne*, 129 Wn.2d at 782 (citing *Libretti v. United States*, 516 U.S. 29, 116 S. Ct. 356, 133 L. Ed. 2d 271 (1995)).

[51]*Thorne*, 129 Wn.2d at 782.

[52]*Id.*

We reject Meggyesy's invitation to remand for resentencing on this basis.

## Initiative 159

Finally, Meggyesy claims that Initiative 159, the Hard Time for Armed Crime law,[53] violates the single-subject requirement of the Washington Constitution. Our Supreme Court addressed this issue in *State v. Broadaway*.[54] The court's opinion in that case resolves Meggyesy's arguments.

In *Broadaway*, the court held that while Initiative 159, the Hard Time for Armed Crime law, violates the single-subject provision of Washington's Constitution, the portions of the initiative that do not fall within the legislative title are severable.[55] Thus, the portion of the initiative providing for sentence enhancements for armed crime is constitutionally valid.[56]

Meggyesy contends that the legislation is not severable, assuming that the ballot title, rather than the legislative title, must comply with the single-subject rule. The Supreme Court specifically held that the legislative title rather than the ballot title must be in compliance.[57]

We affirm the judgments and sentences.

KENNEDY, A.C.J., and BECKER, J., concur.

Review denied at 136 Wn.2d 1028 (1998).

---

[53]Codified at RCW 9.94A.310(3).

[54]133 Wn.2d 118, 942 P.2d 363 (1997).

[55]133 Wn.2d at 128.

[56]*Id.*

[57]*Broadaway*, 133 Wn.2d at 126.