[No. 70700-6. En Banc.]

Argued October 18, 2001. Decided February 7, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. DARRELL D. EVERYBODYTALKSABOUT, *Petitioner*.

MADSEN, J., concurs in the result only.

*Darrell D. Everybodytalksabout*, pro se.

*Catherine E. Glinski* and *James R. Dixon* (of *Nielsen, Broman & Associates, P.L.L.C.*), for petitioner.

*Norm Maleng*, *Prosecuting Attorney*, and *Deborah A. Dwyer* and *Ann M. Summers*, *Deputies*, for respondent.

SMITH, J. — Petitioner Darrell D. Everybodytalksabout seeks review of an unpublished decision of the Court of Appeals, Division One, which in a divided opinion affirmed his King County Superior Court conviction for first degree murder and second degree murder under RCW 9A.32-.030(1)(b) and (c).[1] We reverse the Court of Appeals and remand for a new trial.

## QUESTIONS PRESENTED

The questions presented in this case are: (1) whether inadmissible "acts" under ER 404(b) are limited to bad acts, disgraceful acts or unpopular acts; (2) whether evidence was improperly excluded from Petitioner's second trial following a mistrial because of perjured testimony of the State's principal witness; and (3) whether Respondent State of Washington mismanaged Petitioner's case.

## STATEMENT OF FACTS[2]

Petitioner Darrell D. Everybodytalksabout was jointly charged with Phillip Lara Lopez by information filed in the King County Superior Court on February 17, 1997 with the crime of murder in the first degree, the information reading:

---

[1] Clerk's Papers at 7-8. Opinion by Baker, J.; concurrence by Grosse, J.; and dissent by Becker, A.C.J.

[2] The facts recited in this opinion are based substantially upon those recited in the unpublished opinion of the Court of Appeals.

That the defendants DARRELL EVERYBODYTALKSABOUT and PHILLIP LARA LOPEZ, and each of them, in King County, Washington, during a period of time intervening between February 3rd, 1996 through February 4, 1996, while committing and attempting to commit the crime of Robbery in the First Degree, and in the course of and in furtherance of said crime and in immediate flight therefrom, did cause the death of Rigel Jones, a human being who was not a participant in the crime, and who died on or about February 4, 1996;

Contrary to RCW 9A.32.030(1)(c), and against the peace and dignity of the State of Washington.[3]

On April 11, 1997 the Prosecuting Attorney filed an amended information which added Count II in the alternative charging Darrell [D.] Everybodytalksabout and Phillip Lara Lopez with the crime of murder in the second degree, a crime of the same or similar character as another crime charged in the information, as follows:

That the defendants DARRELL EVERYBODYTALKSABOUT and PHILLIP LARA LOPEZ, and each of them, in King County, Washington, during a period of time intervening between February 3rd, 1996 through February 4, 1996, while committing and attempting to commit the crime of Assault in the Second Degree, and in the course of and in furtherance of said crime and in immediate flight therefrom, did cause the death on or about February 4, 1996, of Rigel Jones, a human being who was not a participant in the crime.

Contrary to RCW 9A.32.050(1)(b), and against the peace and dignity of the State of Washington.[4]

On May 5, 1997 the Prosecuting Attorney filed a second amended information against Petitioner Everybodytalksabout and Phillip Lara Lopez adding to each Count I and Count II previously charged a deadly weapons charge accusing them "at [the time of the offense] of being armed with a deadly weapon, to-wit; a knife, under the authority of RCW 9.94A.125 and 9.94A.310."[5]

---

[3] Clerk's Papers at 1.

[4] Clerk's Papers at 8.

[5] Clerk's Papers at 9-10.

The case proceeded to a jury trial against both defendants before the Honorable Larry A. Jordan on May 7, 1997.[6] Following discovery that the State's principal witness, one Richard Prevost, committed blatant perjury when he falsely claimed he was present at the scene at the time of the crime and testified in great and specific detail implicating Petitioner Everybodytalksabout, the court granted a motion for mistrial as to Petitioner Everybodytalksabout on May 22, 1997.[7]

A second jury trial proceeded against Petitioner Everybodytalksabout alone under the original second amended information before the Honorable Donald D. Haley on July 22, 1997. The jury on July 25, 1997 returned verdicts of "guilty" of murder in the first degree and "guilty" of murder in the second degree, with a special verdict finding that Petitioner was armed with a deadly weapon at the time of each offense.[8]

On September 12, 1997 Judge Haley, after concluding that Count II merged with Count I for sentencing purposes, sentenced Petitioner to a maximum term of life[9] and community placement for two years.[10]

On September 29, 1997 Petitioner gave notice of appeal to the Court of Appeals, Division One.[11] On November 13, 2000 the Court of Appeals in an unpublished opinion affirmed the conviction. On January 13, 2001 Petitioner sought review by this court which we granted on July 10, 2001.

On February 3, 1996 Rigel Jones, a 24-year-old young man, parked his Toyota pickup truck under the Alaskan

---

[6] I Report of Proceedings at 12.

[7] IX Report of Proceedings at 12.

[8] Clerk's Papers at 84-85.

[9] Clerk's Papers at 88-90.

[10] Clerk's Papers at 93.

[11] Clerk's Papers at 95.

Way viaduct in downtown Seattle and spent the evening with friends visiting nightclubs in Pioneer Square. Shortly after 4:00 A.M. on February 4, 1996 he was found dead next to his truck in a parking lot. He had been stabbed twice in the chest by a single-edged instrument and his wallet, pager and jacket were missing.

Seattle police authorities were unable to identify any suspects until, approximately one year after Mr. Jones' death, one Richard Prevost came forth with a purported eyewitness account. In a recorded statement, he told Detective Eugene Ramirez that he was with Phillip Lara Lopez and Petitioner Everybodytalksabout on the night Mr. Jones was killed. He claimed that Mr. Lopez and Petitioner assaulted and robbed Mr. Jones, leaving him on the ground. Mr. Prevost did not say that Mr. Jones was stabbed. However, he did say Petitioner carried a pocket knife with a long blade and that Petitioner admitted he might have killed Mr. Jones. Mr. Prevost's statement was the basis upon which Mr. Lopez and Petitioner were ultimately charged in the death of Mr. Jones with alternative counts of first degree murder and second degree murder, each with a deadly weapon enhancement.

After their arrests, Mr. Lopez and Petitioner gave separate recorded statements to Seattle police detectives. Mr. Lopez said he and Petitioner were present at the murder scene, but stated that Petitioner stabbed Mr. Jones. When the detectives questioned Petitioner, he first denied having anything to do with the stabbing. Detective Eugene Ramirez then told Petitioner that several people had implicated him in the stabbing and played a portion of Mr. Lopez' recorded statement to him. Petitioner then responded that on the night of the stabbing, he and Mr. Lopez had engaged in a drug transaction under the viaduct with a buyer who refused to pay. Petitioner said he told Mr. Lopez to get the money from the buyer, that Mr. Lopez returned with money and a jacket he did not have on earlier and that Mr. Lopez also had blood on his shirt. Petitioner in his statement

insisted he had nothing to do with any altercation and that he did not witness a fight between Mr. Lopez and Mr. Jones. He also mentioned that "Yolanda" and "Mary" were with them that night. The detectives contacted Ms. Yolanda Ramirez-Lopez, who denied any knowledge of the incident.

After the mistrial following discovery that the State's principal witness, Richard Prevost, was actually in jail in Skagit County on the date he claimed he was present in Seattle and witnessed the incident, at Petitioner's second trial Ms. Ramirez-Lopez (having admitted in the first trial that she was with Mr. Lopez and Petitioner the night Mr. Jones was stabbed) testified that she, Phillip Lara Lopez and Petitioner were drinking beer by the waterfront on the night of the incident; that when they ran out of beer, they left the waterfront and walked North under the viaduct; that they noticed a young man in the parking lot; that Petitioner walked toward the young man; that Mr. Lopez instructed her to "keep walking" and then joined Petitioner; and that, as she walked away, she heard loud voices and turned around to observe them "messing around"; that she kept walking and Mr. Lopez and Petitioner caught up with her a short time later; that Petitioner said they had to "get out of here"; and that Mr. Lopez had blood on his hands, wiped them on his shirt and threw the shirt away. Ms. Ramirez-Lopez testified that the next morning Mr. Lopez told her he had been in a fight with a "white boy" and that he might have killed him. She could not remember the specific date, but she thought it was sometime during the winter of 1996 in January, February or March. She admitted that she became intoxicated daily during that period and that her memory was sometimes affected by her drinking.

At Petitioner's second trial, the trial court permitted the State to introduce the testimony of Seattle Police Detective Jeffrey D. Martin that, as a patrol officer in Pioneer Square from the middle of 1992 to the beginning of 1996, he often saw Petitioner and Mr. Lopez together in Pioneer Square

and that Petitioner would usually carry conversations with the officer while Mr. Lopez stood back or walked away.

The pertinent testimony of Detective Martin in response to questions by the Deputy Prosecuting Attorney follows:[12]

Q. Detective Martin, from your personal experience in Pioneer Square, are you aware of any association between Mr. Everybodytalksabout and Mr. Lopez?

A. Yes, I am.

Q. What did you notice along those lines walking around down there?

A. During routine patrol business, I would see the two on a continual basis.

Q. And approximately how often would you see them together?

A. It's hard to say exact numbers, but if I would see Mr. Everybodytalksabout, at least 50 percent of the time Mr. Lopez would either be directly with him or in the same general vicinity.

Q. Did you ever contact the two of them together?

A. Yes.

Q. Did you ever have conversations with them?

A. Yes.

Q. So when you contacted them, did one of the other do more of the talking?

A. Yes.

Q. And who was that?

A. Mr. Everybodytalksabout generally carried the conversation with myself [sic].

Q. Based on your experience with the two of them, when you saw them together, did one or the other appear to you, in your interactions with them, to be the leader of the two?

A. In my interactions with both of them, Mr. Everybodytalksabout clearly would carry the conversation with myself [sic], and Mr. Lopez would stand back a couple of feet or turn his back and start walking away.

[12] Report of Proceedings at 184-86.

Petitioner's counsel objected to specific questions throughout this testimony and those objections were overruled. Counsel then on cross-examination asked only one question of Detective Martin which he answered:[13]

Q. Detective Martin, when you would see Mr. Everybodytalksabout, would there be other people around besides Mr. Lopez, on occasion?

A. Yes.

Throughout the police investigation and in testimony during trial, Petitioner Darrell D. Everybodytalksabout was referred to as "Diego" and his former co-defendant, Phillip Lara Lopez, was referred to as "Felipe."

## DISCUSSION

### TESTIMONY OF DETECTIVE MARTIN

Petitioner Everybodytalksabout claims Respondent State of Washington impermissibly relied on his character traits of leadership and assertiveness through the testimony of Detective Jeffrey D. Martin to argue that Petitioner encouraged Phillip Lara Lopez to rob and kill Rigel Jones.[14] He asserts that "acts" inadmissible under ER 404(b) are not limited to "bad acts," but the rule prohibits evidence of any prior acts to establish the defendant's propensity to act in a certain manner.[15] Petitioner claims Respondent misinterpreted *State v. Halstien*[16] as limiting exclusion of "acts" under ER 404(b) to unpopular or disgraceful conduct.[17] Petitioner argues the language in *Halstien* indicates that while "misconduct" includes acts that are unpopular or disgraceful, it is not limited to those acts.[18]

Respondent State of Washington argues the court in *Halstien* held that only acts that are unpopular or disgrace-

---

[13] Report of Proceedings at 186.

[14] Suppl. Br. of Pet'r at 2.

[15] *Id.* at 3.

[16] *State v. Halstien*, 122 Wn.2d 109, 857 P.2d 270 (1993).

[17] Suppl. Br. of Pet'r at 4.

[18] *Id.* at 5.

ful are excluded under ER 404(b).[19] It argues that, unlike in *Halstien*, the acts in this case were not unpopular nor disgraceful and thus should not be excluded.[20] It claims the testimony of Detective Martin was brief and offered only to show the nature of the relationship between Petitioner and Mr. Lopez: that they were close associates and that Petitioner often took the lead in their interaction with other people.[21] But the State acknowledges it relied upon that testimony to establish that Petitioner was liable as an accomplice.

The Court of Appeals concluded the trial court erred in admitting the testimony of Detective Martin.[22] The court indicated that "acts" under ER 404(b) are not limited to "bad acts,"[23] stating the rule applies when evidence of prior acts is used to arouse prejudice and invites the jury to convict a defendant based upon the defendant's character.[24]

ER 404(b) provides:

> **Other Crimes, Wrongs, or Acts.** *Evidence of other* crimes, wrongs, or *acts is not admissible to prove the character of a person in order to show action in conformity therewith.* It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Emphasis added.)

 "To admit evidence of other crimes or misconduct under ER 404(b), the trial court must identify on the record the purpose for which it is admitted."[25] ER 404(b) evidence

---

[19] Suppl. Br. of Resp't at 11-12.

[20] *Id.* at 12.

[21] *Id.* at 14.

[22] *State v. Everybodytalksabout*, No. 41409-7-I, slip op. at 5 (Wash. Ct. App. Nov. 13, 2000).

[23] *Id.*

[24] *Id.*

[25] *State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997).

must be relevant to a material issue and its probative value must outweigh its prejudicial effect.[26] Evidence of prior misconduct "is inadmissible to show that the defendant is a dangerous person or a 'criminal type' and is thus likely to have committed the crime for which [the defendant] is presently charged."[27] This does not answer the question whether any prior conduct, which is not misconduct, is governed by the same rule.

In *Halstien* this court concluded the defendant's prior conduct did not rise to the level of "misconduct," but that his conduct constituted "acts" under ER 404(b).[28] The court discussed whether the defendant's prior contacts with the victim were "acts" within the meaning of ER 404(b),[29] concluding that " 'prior misconduct,' including 'acts that are merely unpopular or disgraceful', [are] inadmissible to show that the defendant is a 'criminal type' and is likely to have committed a crime for which charged."[30]

Petitioner correctly concludes that "acts" inadmissible under ER 404(b) include any acts used to show the character of a person to prove the person acted in conformity with it on a particular occasion. The court in *Halstien* did not limit inadmissible acts under ER 404(b) to unpopular or disgraceful acts, but stated only the prior misconduct may include acts that are merely unpopular or disgraceful. Inadmissible "acts" under ER 404(b) are not limited to acts that are unpopular or disgraceful.

Respondent State of Washington argues the court in *State v. Brown* concluded evidence was admissible because it was not negative and did not reflect any misconduct.[31]

---

[26] *Id. See* ER 403.

[27] 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE, author's cmt. (3), at 207 (2002).

[28] *Halstien*, 122 Wn.2d at 126.

[29] *Id.*

[30] *Id.* (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 114, at 383-84 (3d ed. 1989)).

[31] *State v. Brown*, 132 Wn.2d 529, 940 P.2d 546 (1997). Suppl. Br. of Resp't at 12.

Petitioner responds that the court in *Brown* used overly broad language to hold the evidence admissible simply because it was not used as propensity evidence to suggest that the defendant committed the offense for which he was charged.[32] The Court of Appeals concluded Respondent incorrectly relied on *Brown*, pointing out that this case is distinguishable from *Brown* because, unlike in that case, Petitioner's prior acts were in fact offered to show that Petitioner "was the leader and that the incident might not have happened were it not for" Petitioner; and that the trial court gave no limiting instruction to the jury concerning the evidence.[33]

In *Brown* this court concluded that evidence of the defendant's contacts with two women unrelated to the crime was not prohibited under ER 404(b), reasoning the testimony was relevant to establish background information; that the defendant was not prejudiced because his conduct with both women involved no crime or misconduct; and any possibility the jury might have speculated he was stalking the two women was obviated by the trial court's limiting instructions.[34]

This court in *Brown* did not conclude that only acts involving crime or misconduct are inadmissible under ER 404(b). The court discussed whether the evidence was relevant and whether its probative value was outweighed by prejudice under ER 403. The court stated that the evidence was relevant to provide background information and the defendant "was not *prejudiced* by the testimony of [the two women] because his contact with both women involved no crime or misconduct" to establish evidence in the case and thus "it did not come within the purview of ER 404(b)."[35] The court did not address whether defendant's conduct would be considered inadmissible "acts" under ER

---

[32] Suppl. Br. of Pet'r at 8-10.

[33] *Everybodytalksabout*, No. 41409-7-I, slip op. at 6-7 .

[34] *Brown*, 132 Wn.2d at 578.

[35] *Id*. at 579 (emphasis added).

404(b) under different facts, but instead focused on whether the testimony of the two women was relevant, admissible and prejudicial. Respondent's reliance on *Brown* is misplaced.

The relevance of Detective Martin's testimony in this case was not established. Relevant evidence is "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[36] Evidence admissible under ER 404(b) must be relevant.[37] The fact that Detective Martin believed from his past observation from the middle of 1992 to the beginning of 1996 that Petitioner Everybodytalksabout was the leader in his relationship with Mr. Lopez is not relevant to establish that Petitioner was the leader between February 3 and 4, 1996 when Mr. Jones was killed by Mr. Lopez. Detective Martin was not present at that time and he testified to nothing relating to the specific incident involving the killing of Mr. Jones by Mr. Lopez. Nor did he testify to observing any behavior by Petitioner which occurred on any date even close to February 3 or 4, 1996.

Even if the testimony of Detective Martin were relevant, it was not admissible under ER 404(b). Although Petitioner's prior "acts" about which the detective testified were not misconduct, unpopular or disgraceful, they were offered to show his qualities of leadership; that he acted in conformity with those qualities at the time Mr. Jones was killed; and he therefore somehow participated with Mr. Lopez in killing Mr. Jones. The evidence is inadmissible under ER 404(b). The Court of Appeals was correct in concluding it was error for the trial court to admit the testimony of Detective Martin.

■ "An evidentiary error which is not of constitutional magnitude, such as erroneous admission of ER 404(b) evidence, requires reversal only if the error, within reason-

---

[36] *State v. Stenson*, 132 Wn.2d 668, 701-02, 940 P.2d 1239 (1997).

[37] *See Brown*, 132 Wn.2d at 571.

able probability, materially affected the outcome."[38] The error is " 'not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.' "[39] The error is harmless if the evidence is of minor significance compared to the overall evidence as a whole.[40]

In her dissent to the Court of Appeals opinion, Acting Chief Judge Mary Kay Becker reasoned that the error was not harmless, stating that:

> To convict in this case, the jury had to rule out the possibility that the defendant merely stood by and watched while Phi[l]lip Lopez stabbed and robbed the victim. With only the hazy recollections of Yolanda Lopez to go on, the jury probably would have been less willing to believe that Everybodytalksabout had criminal intent when he approached the man on the street. But once the jury was allowed to hear from a reliable witness that Everybodytalksabout usually took the lead while Phi[l]lip stayed in the background, the possibility that Phi[l]lip committed the crime without Everybodytalksabout's participation would have seemed remote. Such is the power of character evidence: He typically acts this way, therefore he must have acted this way on the night in question.
>
> The testimony of Yolanda Lopez was sufficient to support the conviction, as the majority notes, but sufficiency is not the test for harmless error. The officer's testimony added significant weight to an otherwise weak case. It went directly to the key issue: whether the defendant participated in the crime. There is a reasonable probability that the outcome of the trial would have been materially affected had the error not occurred. The defendant is entitled to a new trial.[41]

Petitioner argues the trial court's error in admitting the testimony of Detective Martin was not harmless because there was not sufficient evidence to convict Petitioner

---

[38] *Stenson*, 132 Wn.2d at 709.

[39] *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)).

[40] *See Bourgeois*, 133 Wn.2d at 403.

[41] *Everybodytalksabout*, No. 41409-7-I, slip op. at 4 (Becker, A.C.J., dissenting).

without that testimony.[42] He claims the court could not use the testimony of Ms. Yolanda Ramirez-Lopez to determine the error was harmless because she was impeached by multiple conflicting prior statements and was intoxicated at the time Mr. Jones was killed.[43] He asserts the State did not sufficiently prove its case because it is beyond dispute that Respondent's key witness, Richard Prevost, perjured himself in the first trial with the consequence of a mistrial.[44] Petitioner maintains the crime laboratory did not find any physical evidence connecting him to the crime.[45] He contends that without Detective Martin's testimony there is nothing to connect him with the crime.[46]

Respondent State of Washington asserts that even if Detective Martin's testimony were improperly admitted, the error was harmless.[47] Respondent claims the testimony was brief and cumulative because Ms. Ramirez-Lopez' testimony and Petitioner's own taped statement indicated he took the lead in his relationship with Mr. Lopez.[48]

The Court of Appeals concluded the error was harmless and the outcome of the trial probably would not have been affected even if Detective Martin's testimony had been excluded.[49] The court stated there was sufficient evidence to convict Petitioner based upon properly admitted evidence even without the testimony of Detective Martin.[50] The court indicated the testimony that Petitioner was a leader was not particularly significant because he was

---

[42] Pet. for Review at 12-13.

[43] *Id.* at 13.

[44] *Id.* at 14. Richard Prevost did not testify at Petitioner's second trial, the case now before the court.

[45] *Id.*

[46] *Id.* at 13-14.

[47] *Id.* at 14.

[48] *Id.* at 16.

[49] *Everybodytalksabout*, No. 41409-7-I, slip op. at 8.

[50] *Id.* at 8-9.

convicted under a felony murder theory.[51] Based upon our review of the record, we do not agree with the conclusion that the error was harmless.

We conclude the error in admitting Detective Martin's testimony was not harmless. There was not sufficient evidence to convict Petitioner without it. Ms. Ramirez-Lopez' testimony of itself was not sufficient to convict Petitioner. She testified that during the time of the incident she was intoxicated on a daily basis which affected her memory and that she did not witness the robbing or stabbing of Mr. Jones. Petitioner's taped statement is not sufficient of itself to convict him. In that statement he does not indicate that he participated in any manner or that he encouraged Mr. Lopez to rob and kill Mr. Jones.[52] The State presented no physical evidence to connect Petitioner with the crime.

Petitioner was convicted under an accomplice liability theory.[53] Respondent State was required to prove he actually participated in the crime. The State in justifying its conduct points out that Petitioner was charged as an accomplice and that, therefore, admission of testimony concerning his apparent qualities of leadership was proper.

RCW 9A.08.020 provides, in part:

(1) A person is guilty of a crime if it is committed by the conduct of another person for which [the person] is legally accountable.

(2) A person is legally accountable for the conduct of another person when:

. . . .

(c) He is an accomplice of such other person in the commission of the crime.

---

[51] *Id.* at 8.

[52] Clerk's Papers at 104 (In his taped statement Petitioner said, "See, I ain't going to let nobody see me out there because you know too my undercovers out there, you know. I told Felipe, he said don't worry about it. That's what he told. He said don't worry about it. I'll take care of it. I said okay. I didn't think he was going over there and do what he did, you know.").

[53] *See* Report of Proceedings (July 24, 1997) at 107.

(3) A person is an accomplice of another person in the commission of a crime if:

(a) With knowledge that it will promote or facilitate the commission of the crime, he

(i) solicits, commands, encourages, or requests such other person to commit it; or

(ii) aids or agrees to aid such other person in planning or committing it; or

(iii) His conduct is expressly declared by law to establish his complicity.

. . . .

Under the accomplice statute, RCW 9A.08.020, "a person is not an accomplice unless [that person] knowingly 'solicits, commands, encourages, or requests' the commission of a crime, or aids in the planning or commission [of the crime]. . . . [P]hysical presence and assent alone are insufficient to constitute aiding and abetting. . . . [S]omething more than presence alone plus knowledge of ongoing activity must be shown to establish the intent requisite to finding [an accused] to be an accomplice."[54]

Petitioner does not claim error by the trial court in its instructions on accomplice liability, and indeed did not take exception to them at trial. We nevertheless question the accuracy of instruction 5 actually given when read together with instruction 6 because they tend to mislead the jury concerning the law. Instruction 5 read:

A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:

(1) solicits, commands, encourages, or requests another person to commit the crime; or

(2) aids or agrees to aid another person in planning or committing a crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is

---

[54] *In re Welfare of Wilson*, 91 Wn.2d 487, 491-92, 588 P.2d 1161 (1979) (citations omitted).

present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.[55]

The court's instruction 6 stated merely, "A participant is an accomplice or principal in the underlying crime."[56]

The "to convict" instructions, in order to avoid reference to former co-defendant Phillip Lara Lopez, used the following language in instruction 4, for example:

> To convict the defendant of the crime of murder in the first degree, as charged in count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 4th day of February, 1996, Rigel Jones was killed;
>
> (2) That the defendant or an accomplice was committing or attempting to commit robbery in the second degree;
>
> (3) That the defendant or an accomplice caused the death of Rigel Jones in the course of or in furtherance of such crime or in immediate flight from such crime;
>
> . . . . [57]

Without Detective Martin's testimony there was not sufficient evidence to support Respondent's theory that Petitioner was an accomplice. The error in admitting the testimony of Detective Martin was not harmless. It is likely the outcome of the trial would have been different if the error had not occurred.

### STATE'S MOTION TO SUPPLEMENT THE RECORD

Two days prior to oral argument, the State filed a motion to supplement the record on appeal under RAP 9.10. Petitioner filed no answer within the one day allowed. The State asked to supplement the record with "Pretrial Exhibit

---

[55] Clerk's Papers at 60.

[56] *Id.* at 61.

[57] *Id.* at 59.

from the defendant's first trial, which is a transcript of codefendant Phillip Lopez's second statement to police." The State did not adequately explain its delay in filing the motion, why the document is relevant, and, if it is, why it was not included in the record initially. Notwithstanding that, we grant the motion without setting a precedent for similar circumstances in future cases.

## EXCLUSION OF EVIDENCE

### Evidence of Another Stabbing Involving Phillip Lara Lopez

Petitioner Everybodytalksabout claims the Court of Appeals was in error in affirming exclusion by the trial court of evidence that Ms. Yolanda Ramirez-Lopez knew of another stabbing in which Phillip Lara Lopez was involved. He argues her knowledge of the other stabbing may have confused her during her testimony because the events were remarkably similar.[58] Respondent argues the events were not remarkably similar and such evidence would only confuse and inflame the jury.[59] It claims that if there was error, it was harmless because Petitioner was not precluded from establishing that Ms. Ramirez-Lopez' memory was hazy from alcohol use on the night Mr. Jones was killed.[60]

The Court of Appeals indicated there were significant differences in the two events and little indication that Ms. Ramirez-Lopez was confused by the two.[61] The court concluded that, given its marginal relevance, the trial court did not abuse its discretion in excluding the evidence because it would have tended to confuse the jury.[62] We agree.

In this case the Court of Appeals correctly concluded the evidence of Mr. Lopez' prior conduct was of marginal

---

[58] Pet. for Review at 15.

[59] Suppl. Br. of Resp't at 19-20.

[60] *Id.* at 21.

[61] *Everybodytalksabout*, No. 41409-7-I, slip op. at 11.

[62] *Id.*

relevance when balanced against Respondent's compelling interest in not confusing or inflaming the jury. Any error in excluding this evidence was harmless because Respondent was not precluded from presenting evidence of Ms. Ramirez-Lopez' intoxication to discredit her testimony.

### Evidence of Tape Recorded Statement of Perjurer Richard Prevost

Petitioner gave a taped statement to police officers which was played to the jury.[63] He stated in part, "I didn't see nothing that went on, whatever. He talking about some knife. I don't know nothing about no knife or anything but I know, you know, it's instinct you know."[64] On the tape Detective Eugene Ramirez interjected, "Just a second. You're making some reference about a knife. Are you referring to what you heard in a tape recorded statement that we played to you?" Petitioner stated, "Yeah, I did. See, I didn't know."[65]

Petitioner sought to introduce evidence that before he gave his statement to Detective Ramirez, the detective played tape recorded statements from Mr. Lopez and Mr. Prevost which contained false claims that Petitioner killed Mr. Jones.[66] The trial court allowed Petitioner to refer to the two persons who made the false statements but did not allow him to mention their names.[67]

---

[63] Clerk's Papers at 102.

[64] *Id.*

[65] *Id.*

[66] Report of Proceedings (July 23, 1997) at 6.

[67] *Id.* at 13. The trial court stated in part:

I'll let the defense talk about two people. I'll let them go into the two people without names, because I'm concerned about the possibility of jurors saying this is Prevost and this is the person who falsely accused. I'm unable to understand why the defense would not get a fair trial because the two were named and that one was given publicity and apparently committed perjury. I'll let the defense go into it without the name. To balance it out neither name will be mentioned by the State or the defense.

Petitioner Everybodytalksabout argues the trial court erroneously excluded evidence that during his interview with police detectives he heard a tape of false statements made by Mr. Prevost during his interview with them.[68] He contends the jury was entitled to know the circumstances under which his statement was made to the officers and that Respondent has not established a compelling interest in excluding that evidence.[69]

Respondent State of Washington asserts the statement of Mr. Prevost was not relevant to explain Petitioner's statement and that there is nothing in the record to establish that Mr. Prevost's statement was in fact played to Petitioner by the officers.[70] The Court of Appeals concluded Petitioner has not shown he actually heard Mr. Prevost's statement.[71] The court indicated the evidence was not necessary because the jury already knew from the testimony of Detective Ramirez that witnesses had implicated Petitioner.[72]

The trial court and Court of Appeals were correct. Evidence of the taped statement of Mr. Prevost had little relevance; and any relevance it may have had was outweighed by the danger of unfair prejudice, confusion, or misleading the jury.[73]

### Governmental Mismanagement

Petitioner Everybodytalksabout argues Respondent State of Washington should have discovered that Mr. Prevost was incarcerated in Skagit County on the day Mr. Jones was killed in Seattle and could not have been present with Petitioner and Mr. Lopez to witness the incident as he

---

[68] Pet. for Review at 17.

[69] *Id.* at 15-16.

[70] Suppl. Br. of Resp't at 22.

[71] *Everybodytalksabout*, No. 41409-7-I, slip op. at 10.

[72] *Id.*

[73] *See* ER 403.

falsely indicated in his statement to detectives and as he falsely testified during his extensive testimony in the first trial.[74] He claims Respondent's failure to discover those circumstances constituted "case mismanagement."[75] He asserts this mismanagement caused him to relinquish his right to a speedy trial.[76]

Respondent claims it acted reasonably in investigating Mr. Prevost's whereabouts on the day of the incident.[77] It asserts Detective Ramirez obtained a "booking recap" which indicated Mr. Prevost was not in jail on the day of the incident.[78] Respondent maintains this information could easily have been obtained by Petitioner.[79] Respondent asserts that it promptly informed the court and Petitioner's attorney when it discovered the perjury of Mr. Prevost while the first trial was underway. Respondent argues that, at any rate, Petitioner has not shown he was prejudiced by any claimed mismanagement.[80]

The Court of Appeals concluded Detective Ramirez reasonably relied on the accuracy of the booking recap and had no reason to believe Mr. Prevost had perjured himself in his statement implicating Petitioner.[81] The court indicated the conduct did not amount to governmental misconduct warranting dismissal.[82]

CrR 8.3(b) provides:

**On Motion of Court.** The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there

---

[74] Pet. for Review at 18-19.

[75] *Id.* at 19.

[76] *Id.*

[77] Suppl. Br. of Resp't at 23-24.

[78] *Id.*

[79] *Id.* at 24.

[80] *Id.* at 25.

[81] *Everybodytalksabout*, No. 41409-7-I, slip op. at 13.

[82] *Id.*

has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

To obtain dismissal of a case under CrR 8.3(b) a defendant must show (1) arbitrary government action or government misconduct and (2) prejudice affecting the defendant's right to a fair trial.[83] The trial court's decision will be reviewed under the manifest abuse of discretion standard.[84]

The trial court in this case did not abuse its discretion when it found Respondent's conduct did not constitute governmental mismanagement. Respondent reasonably relied on the booking recap sheet. When Respondent discovered during the first trial that Mr. Prevost had committed perjury in his testimony, it informed the court and defense counsel. Petitioner has not shown he was prejudiced by the action of Respondent. Petitioner has presented no facts establishing that he was denied a right to a speedy trial. Even if he did, he still has not shown how he was prejudiced by that denial. Respondent State of Washington did not mismanage this case.

## ISSUES IN PETITIONER'S PRO SE BRIEF

Petitioner Everybodytalksabout claims Detective Ramirez engaged in cajolery by scaring him into making a statement when the detective played a tape containing false statements previously made by Mr. Prevost accusing Petitioner of killing Mr. Jones.[85] The Court of Appeals concluded there is no evidence in the record that the detective played Mr. Prevost's statement to Petitioner; and even if

---

[83] *State v. Michielli*, 132 Wn.2d 229, 239-40, 937 P.2d 587 (1997).

[84] *Michielli*, 132 Wn.2d at 240.

[85] Pro se Suppl. Br. Pursuant to RAP 10.1(d); RAP 10.2(e), RAP 10.3(d) at 11. Cajolery is a "deliberate attempt at persuading or deceiving the accused, with false promises, inducements or information, into relinquishing [the accused's] rights and responding to questions posed by law enforcement officers." *State v. Davis*, 73 Wn.2d 271, 282, 438 P.2d 185 (1968).

the tape had been played to Petitioner, the detective did not at the time know the Prevost statement was false.[86]

Petitioner Everybodytalksabout has presented no evidence to establish that he actually heard the tape of the statement by Mr. Prevost. Even if Detective Ramirez did allow Petitioner to hear the false statements, it would not constitute a deliberate attempt to deceive Petitioner because Detective Ramirez did not at the time know the statements were false. Petitioner has presented no evidence that his own statement to police officers was not voluntarily made.

▆▆▆ Petitioner claims the trial court erred in not giving an intoxication instruction to the jury when there was evidence he was consuming alcohol and was intoxicated during the time Mr. Jones was killed.[87] The Court of Appeals concluded there was insufficient evidence that his drinking affected Petitioner's ability to form the necessary intent to commit the crime.[88] "[A] criminal defendant is entitled to a voluntary intoxication jury instruction only if: (1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected [the defendant's] ability to acquire the required mental state."[89] Petitioner has established the first two elements but has not presented sufficient evidence to show his intoxication affected his ability to acquire the required mental state. Petitioner was not entitled to a voluntary intoxication instruction.

▆▆▆ Petitioner argues his constitutional right of confrontation was violated when the trial court allowed his co-defendant, Phillip Lara Lopez, to make a statement to the

---

[86] *Everybodytalksabout*, No. 41409-7-I, slip op. at 14.

[87] Pro se Suppl. Br. Pursuant to RAP 10.1(d); RAP 10.2(e), RAP 10.3(d) at 12.

[88] *Everybodytalksabout*, No. 41409-7-I, slip op. at 14.

[89] *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37, *review denied*, 119 Wn.2d 1024 (1992) (footnote omitted).

jury and when it did not allow Petitioner to testify.[90] Petitioner contends that when two or more co-defendants are tried together an out-of-court statement which inculpates the other may not be admitted when the maker of the statement does not testify at the trial.[91] The Court of Appeals correctly concluded Mr. Lopez was not Petitioner's co-defendant in the second trial which is at issue in this case and that Petitioner's right of confrontation is not an issue.

 Petitioner argues the court should have instructed the jury to view Ms. Yolanda Ramirez-Lopez' testimony with caution because she was an accomplice.[92] The Court of Appeals concluded there was nothing in the record suggesting Ms. Ramirez-Lopez was an accomplice and thus the instruction was not required. Cautionary instructions must be given where the testimony of an accomplice is uncorroborated.[93] Ms. Ramirez-Lopez was only a witness and not a co-defendant on trial as an accomplice. The trial court did not err in not giving cautionary instructions concerning her testimony.

## SUMMARY AND CONCLUSIONS

The testimony of Detective Jeffrey D. Martin, even if relevant, was not admissible under ER 404(b). Although Petitioner's prior "acts" were not misconduct, unpopular or disgraceful, they were offered through the testimony of Detective Martin to show Petitioner's qualities of leadership and that he acted in conformity with those qualities at the time Mr. Jones was killed and therefore somehow led Phillip Lara Lopez in robbing and killing Mr. Jones. The Court of Appeals was correct in concluding it was error for the trial court to admit the testimony of Detective Martin, but not correct in concluding the error was harmless.

---

[90] *Everybodytalksabout*, No. 41409-7-I, slip op. at 16. There is nothing in the record to indicate the court did not allow Petitioner to testify. Besides, the decision to testify or not to testify is solely the constitutional prerogative of a defendant.

[91] *Id.*

[92] *Id.* at 7-8.

[93] *State v. Harris*, 102 Wn.2d 148, 153, 685 P.2d 584 (1984).

We agree with the dissent by Acting Chief Judge Mary Kay Becker which correctly concludes that the error was not harmless, pointing out that "[t]he officer's testimony added significant weight to an otherwise weak case. It went directly to the key issue: whether the defendant participated in the crime. There is a reasonable probability that the outcome of the trial would have been materially affected had the error not occurred. The defendant is entitled to a new trial."

Petitioner was convicted under an accomplice liability theory. Respondent State was required to prove he actually participated in the crime. Mere knowledge or physical presence at the scene of a crime neither constitutes a crime nor will it support a charge of aiding and abetting a crime. Without Detective Martin's testimony there was not sufficient evidence to support the State's theory that Petitioner was an accomplice. The error in admitting the testimony of Detective Martin was not harmless. It is likely the outcome of the trial would have been different if the error had not occurred.

The Court of Appeals properly concluded the trial court did not err in excluding evidence that the State's witness, Ms. Yolanda Ramirez-Lopez, knew of another stabbing in which Phillip Lara Lopez (charged, along with Petitioner, with killing Mr. Jones by stabbing him) was involved. The Court of Appeals was correct in its conclusion that, given its marginal relevance when balanced against the State's compelling interest in not confusing or inflaming the jury, the trial court did not abuse its discretion in excluding the evidence.

Petitioner claims the trial court erroneously excluded evidence that during his interview with police detectives he heard a tape of false statements made by Richard Prevost during his interview with them. The Court of Appeals correctly concluded Petitioner has not shown he actually heard Mr. Prevost's statement. Evidence of the taped statement of Mr. Prevost had little relevance; and any relevance

it may have had was outweighed by the danger of unfair prejudice, confusion, or misleading the jury.

The trial court did not abuse its discretion in finding the State's conduct did not constitute mismanagement when it did not earlier discover the blatant perjury of its principal witness in the first trial, Richard Prevost, by determining that he was actually in the Skagit County Jail when he claimed to have been present in Seattle and witnessed Petitioner's conduct which resulted in the death of Rigel Jones. In any event, Petitioner has not established that he was prejudiced by the conduct of the State.

Petitioner has not established any of the claims made in his pro se brief that (1) Detective Eugene Ramirez engaged in cajolery by scaring him into making a statement when the detective played a tape of false statements previously made by Richard Prevost accusing Petitioner of killing Mr. Jones; (2) the trial court erred in not giving an intoxication instruction to the jury when there was evidence Petitioner was consuming alcohol and was intoxicated during the time Mr. Jones was killed; (3) his constitutional right of confrontation was violated when the trial court allowed Petitioner's "co-defendant," Phillip Lara Lopez, to make a statement to the jury and when the court "did not allow" Petitioner to testify; and (4) the trial court erred in not instructing the jury to view Ms. Yolanda Ramirez-Lopez' testimony with caution because she was "an accomplice."

We reverse the decision of the Court of Appeals, Division One, only on the issue of admissibility of the testimony of Detective Jeffrey D. Martin and remand the case for a new trial.

ALEXANDER, C.J., and JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J., concurs in the result.

Reconsideration denied March 18, 2002.