IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71518-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN LEO KAYSER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 21, 2015 |
| | ) | |

BECKER, J. — Steven Kayser appeals his conviction for assaulting a process server. An erroneous ruling admitting character evidence was sufficiently prejudicial to require a new trial.

## FACTS

Steven Kayser, a man in his late sixties at the time of the incident in question, became an inventor after working much of his life as an accountant. Kayser protects his inventions as trade secrets. He has occasionally been involved in litigation concerning them.

Kayser moved to rural Whatcom County in 2006. A driveway marked by a large "no trespassing" sign leads into his property. The first building encountered is a long warehouse where Kayser maintains his office and stores documents. Kayser keeps the windows of this building covered. Kayser's residence is at the end of the driveway.

In February 2010, process server Mark Adams arrived at the Kayser property with a civil summons and complaint to serve on Kayser and his wife. It was about 4:00 p.m. Adams parked his car and walked up to the warehouse. He knocked on one of the doors and tried to look through a window. A phone in Adams' car rang, so he returned to the car momentarily. He then went back to the warehouse and started knocking on a different door.

Kayser's wife, Gloria Young, saw Adams from a window and thought he was "snooping." Young telephoned Kayser in the warehouse to alert him. She then went outside and was approached by Adams. In response to questions, Young told Adams that she lived there and that she was Kayser's wife. Adams handed her some papers from a metal box. Kayser came out of the warehouse and said, "Can I help you?" Adams responded by asking him if he was Steven Kayser. Kayser answered "yes." Adams did not identify himself. He handed documents to Kayser and asked if he would sign for them.

Kayser testified that he perceived Adams as a trespasser. He felt Adams, a large man with long hair, was frightening Young, who is some years older than Kayser, small and a little frail. Kayser also said that when he saw Adams reaching into the metal box, he feared it might contain a gun. In an angry voice, Kayser told Adams he had five seconds to get off the property. Kayser threatened to get a gun.

Adams testified that he immediately began to walk back to his car. Kayser, on the other hand, testified that Adams stayed where he was. Kayser hurried back to his office, came out with a shotgun, and fired a shot. Kayser kept

counting to five and fired two more shots—one after Adams reached his car and one as Adams backed out of the driveway.

Three years later, Kayser was tried and convicted of assault in the second degree while armed with a deadly weapon. The jury answered "yes" to the allegation that the assault occurred with a firearm. Kayser was sentenced to three months for the assault and three years for the firearm enhancement. Kayser appeals.

## SUFFICIENCY OF THE EVIDENCE

Kayser first challenges the sufficiency of the evidence to prove the crime charged. When a conviction must be reversed for insufficiency of the evidence, the case must be dismissed with prejudice. State v. DeVries, 149 Wn.2d 842, 853, 72 P.3d 748 (2003). We therefore address this issue first.

In considering the sufficiency of the evidence, this court reviews the record in the light most favorable to the State to determine whether a rational jury could have found the essential elements of the charge beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

At trial, Adams testified that all the shots were fired into the air, although the second shot was at a lower angle than the others. Kayser argues that Adams' trial testimony supports, at most, the misdemeanor charge of unlawful display of a firearm.

In a statement to police officers right after the incident, Adams said he thought the second shot was fired toward him and he was surprised it did not hit him or his car. The jury could have believed that what Adams told police at the

3

time of the incident was more credible than his memory three years later. And in any event, the State was not required to prove that Kayser shot directly at Adams. The question presented to the jury was whether Kayser used unlawful force with the intent of putting Adams in imminent fear of bodily injury. The element of intent for the felony as charged is in the definition of assault, stated as follows in instruction 7:

INSTRUCTION NO. 7

An assault is an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict harm.

Adams testified that Kayser threatened to shoot him if he was not off the property by the count of five. He recalled that after the first shot, he ran to his car and ducked under the dashboard while fumbling with his keys. He was surprised that the second shot did not hit either him or his car. This evidence was sufficient to prove that Kayser intended his shots to create in Adams apprehension and fear of bodily injury and that Adams did in fact have a reasonable apprehension and imminent fear of bodily injury.

Kayser defended on the basis that the force he used was lawful because he was acting in defense of himself and his wife. Where self-defense or defense of another is claimed, the absence of self-defense becomes another element the State must prove beyond a reasonable doubt. State v. McCullum, 98 Wn.2d 484, 493-94, 656 P.2d 1064 (1983). Kayser contends the State did not present sufficient evidence to show the absence of self-defense.

4

Adams testified that he handed papers to Kayser to sign and asked Kayser for his signature. According to Adams, Kayser responded by proclaiming that Adams would be shot if he were not off the property in five seconds. Adams testified that he immediately began to walk back towards his car. A reasonable jury could conclude from this testimony that Adams posed no threat to Kayser or Young. This was sufficient evidence to carry the State's burden to prove absence of self-defense.

We reject Kayser's challenge to the sufficiency of the evidence.

ER 404(b) – EVIDENCE OF INTENT

We next address the alleged error in admitting evidence under ER 404(b).

During a search of Kayser's office, the police photographed a pencil sketch of what looked like a stop sign. The sketch was found taped to an interior window shutter, facing inward. Below the stop sign diagram were handwritten sentences indicating entry was forbidden without the owner's permission. "This is a very dangerous place" was clearly written on the bottom. On a sticky note attached to the sketch, the phrase "Armed Response" was penciled in.

The State offered the photograph as an exhibit. Kayser objected on ER 404(b) grounds.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). Evidence of a prior act may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). Such evidence must be relevant to

5

a material issue, and its probative value must outweigh its prejudicial effect. State v. Everybodytalksabout, 145 Wn.2d 456, 465-66, 39 P.3d 294 (2002).

To determine whether evidence is admissible under ER 404(b), trial courts must engage in a three-part analysis. First, the court must identify the purpose for which the evidence will be admitted. Second, the evidence must be materially relevant. Third, the court must balance the probative value of the evidence against any unfair prejudicial effect the evidence may have upon the jury. In doubtful cases, the scale should be tipped in favor of the defendant. State v. Smith, 106 Wn.2d 772, 776, 725 P.2d 951 (1986); State v. Wade, 98 Wn. App. 328, 334, 989 P.2d 576 (1999).

The trial court admitted the exhibit as probative of Kayser's intent and found that it was not unduly prejudicial. After a deputy testified and described the sketch, Kayser moved for a mistrial. The motion was denied.

On appeal, Kayser argues the admission of the evidence violated ER 404(b). This court reviews decisions under ER 404(b) for an abuse of discretion. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).

The State initially suggests that ER 404(b) does not apply because the challenged exhibit "does not constitute misconduct or a bad act." The idea that the rule applies only to prior bad acts or misconduct is a misconception. Everybodytalksabout, 145 Wn.2d at 466. The rule prohibits the use of any kind of "other" act as propensity evidence.

"If the State offers evidence of a prior act to demonstrate intent, there must be a logical theory, *other than propensity*, demonstrating how the prior act

6

connects to the intent required to commit the charged offense." Wade, 98 Wn. App. at 334. Here, to convict Kayser of the charged offense, the State had to prove that he fired the shots with the intent to create in Adams apprehension and fear of bodily injury. The State theorizes that the presence of the sketch inside Kayser's office "was an indication from Kayser that he intended to deal with uninvited trespassers with an armed response." This theory does not logically connect the sketch with Kayser's intent when he fired the shots on the day in question. There was no evidence that Kayser himself made the sketch, what its purpose was, or how long it had been hanging in his office.

"Use of prior acts to prove intent is generally based on propensity when the only commonality between the prior acts and the charged act is the defendant. To use prior acts for a nonpropensity based theory, there must be some similarity among the facts of the acts themselves." Wade, 98 Wn. App. at 335. The State did not identify for the trial court any similarity between Kayser's act of firing shots outside the office and his "other" act of keeping the sketch inside the office. When the issue first arose, the prosecutor said, "I think the jury can make of it what they will." What the jury was then allowed to "make of it" was that Kayser had a propensity to use arms to scare off strangers. We conclude the trial court abused its discretion by admitting the sketch.

Errors under ER 404(b) require reversal only if the error, within reasonable probability, materially affected the outcome. The error is harmless "if the evidence is of minor significance compared to the overall evidence as a whole." Everybodytalksabout, 145 Wn.2d at 468-69.

The State argued that Kayser fired the shots because he was angry about being served papers. Kayser argued that he fired the shots with justification because he perceived Adams to be a trespasser who was menacing his wife and did not leave when asked. The exhibit enabled the State to argue that an "Armed Response" was Kayser's preplanned response to unwelcome visitors in general. Thus, the exhibit cast doubt on Kayser's claim that his use of force in this incident was lawful.

The trial court reasoned that the note was not "all that prejudicial" to Kayser because it simply reflected that he was a careful and private man, concerned about the confidentiality of his trade secrets and the safety of himself and his wife. The sketch was more than that. It included the statement "This is a very dangerous place" and the note "Armed Response." This material was prejudicial. It suggested that Kayser was a dangerous individual inclined to resort to firearms without legitimate reason.

Because Kayser's defense depended on the reasonableness of his claim of self-defense and defense of another, we cannot say with confidence that the challenged evidence had no material effect on the outcome of the trial. Kayser is entitled to a new trial.

We next address other issues raised by Kayser that may arise again on retrial.

## DEFENSE OF PROPERTY

Defense counsel initially proposed an instruction on lawful force that included use of force to defend one's property. Just before the case went to the

jury, counsel withdrew that portion of the instruction. Kayser contends counsel's withdrawing the instruction on defense of property was deficient performance.

To establish ineffective assistance of counsel, Kayser must show that (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We presume counsel is effective, and the defendant must show there was no legitimate strategic or tactical reason for counsel's action. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Claims of ineffective assistance of counsel are reviewed on appeal de novo. Sutherby, 165 Wn.2d at 883.

Kayser contends there was no legitimate reason for trial counsel to abandon the defense of property instruction. He argues that if instructed on the defense of property, the jurors might have reasonably believed that he, a man in his late sixties and of small build, used reasonable force to eject a large stranger who he believed to be a trespasser.

Kayser correctly argues that a person who uses force to expel a trespasser will not necessarily incur criminal liability so long as the use of force is reasonable. RCW 9A.16.020. It is not necessary for the defendant in such a case to show that he feared for his own personal safety. State v. Bland, 128 Wn. App. 511, 516, 116 P.3d 428 (2005). "Although the use of deadly force is not justified to expel a mere nonviolent trespasser, under certain circumstances necessary force may include putting a trespasser in fear of physical harm."

Bland, 128 Wn. App. at 517. But defense of property is available to justify the use of force only if the trespass is "malicious":

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
>
> . . . .
>
> (3) Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, *or a malicious trespass*, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary.

RCW 9A.16.020 (emphasis added).

Defense counsel withdrew the defense of property instruction when it became clear that an instruction would also be needed to define the word "malicious." The State proposed an instruction, modeled after RCW 9A.04.110(12), defining "malicious" in terms of "an evil intent, wish, or design to vex, annoy, or injure another person." It was a legitimate tactical decision for counsel to decide against pursuing a defense that would require the jury to find that Adams acted with malice. There was little or no evidence that Adams came on Kayser's property with a wish to annoy or injure anyone. Cf. Bland, 128 Wn. App. at 516 (trespasser was cursing and acting vexatiously).

Instead, counsel argued self-defense and defense of another. That defense theory did not depend on Adams' actual intent, but instead focused on what Kayser reasonably believed. It was more consistent with Kayser's testimony that Adams' conduct made him afraid for himself and more particularly for his wife.

We conclude Kayser has not shown that defense counsel's performance was deficient.

10

## ADEQUACY OF JURY INSTRUCTIONS

Because the jury has the right to regard the to-convict instruction as a complete statement of the law, it should state all elements the State is required to prove. State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). Kayser contends that under this rule, the State's burden to prove the absence of self-defense belongs in the to-convict instruction.

A trial court does not commit reversible error when a to-convict instruction does not refer to the State's burden to prove the absence of self-defense, so long as that burden is made clear through a separate instruction. State v. Hoffman, 116 Wn.2d 51, 109, 804 P.2d 577 (1991); State v. Acosta, 101 Wn.2d 612, 622, 683 P.2d 1069 (1984). That is what happened here. Instruction 5, the to-convict instruction, did not include the absence of self-defense as an element, but the State's burden to prove it was stated in instruction 13.

Kayser also contends the to-convict instruction should have instructed the jury to find that Kayser "intentionally" assaulted another "with the objective or purpose to accomplish a result that constitutes a crime." This language was set forth verbatim in a separate instruction, instruction 11. Kayser does not persuasively explain why it was constitutionally necessary to include the same language in the to-convict instruction, nor does he cite authority that would support such a holding.

## DETECTIVE AT COUNSEL TABLE

At trial, the prosecutor sat at counsel table with Detective John Allgire. Allgire was expected to testify. Kayser moved to exclude Allgire from the

courtroom until the time of his testimony. The court denied the motion. Kayser assigns error to this ruling. The relevant rule of evidence is ER 615. The rule expressly permits a party such as the State, which is "not a natural person," to designate a representative to sit in the courtroom and hear the testimony of other witnesses:

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be reasonably necessary to the presentation of the party's cause.

ER 615. The trial court properly applied the rule.

## STATEMENT OF ADDITIONAL GROUNDS

Kayser filed a statement of additional grounds for review under RAP 10.10(a).

Because Kayser had no criminal history, the standard range for his offense was three to nine months. By statute, a mandatory three-year term must be added when there has been a conviction for assault with a firearm. RCW 9.94A.533(3)(b). The trial court imposed a base sentence of three months and then added three years for the enhancement. Kayser contends a court has discretion to impose a shorter sentence in consideration of a person's age. He relies on <u>Miller v. Alabama</u>, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). But the holding of <u>Miller</u> pertains to juveniles. Kayser is not a juvenile. This argument does not provide an additional ground for review.

Instruction 5 informed the jury that it had a "duty" to convict Kayser if it believed the State had proved all elements of second degree assault. This court has previously rejected the argument that such an instruction is erroneous. <u>State v. Meggyesy</u>, 90 Wn. App. 693, 697-705, 958 P.2d 319, <u>review</u> <u>denied</u>, 136 Wn.2d 1028 (1998), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> State v. Recuenco, 154 Wn.2d 156, 162 n.1, 110 P.3d 188 (2005). We see no basis for reviewing it again.

Reversed.

Becker, J.

WE CONCUR:

Leach, J.

Cox, J.