# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75360-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ABDULLAH HASSAN EKRIEM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 16, 2018 |
| | ) | |

MANN, J. — Abdullah Ekriem appeals his conviction for attempted robbery in the first degree. Ekriem contends that he was denied the effective assistance of counsel because his counsel failed to object to a pattern jury instruction defining "attempt" and failed to object to a portion of the State's closing argument discussing intent. Because defense counsel's conduct did not fall below an objective standard of reasonableness, we affirm.

## FACTS

During the evening of April 11, 2015, Nina Yoon and four male friends were traveling in Yoon's car. Yoon stopped at an ATM (automated teller machine) on Aurora Avenue in Shoreline in order to withdraw cash. Yoon walked to the ATM while her

friends waited in the car. As Yoon stood in front of the ATM, Ekriem approached her from behind with his hood up.

Yoon testified at trial that Ekriem jabbed her with something in her back, and said "don't move, I have a gun." Yoon started screaming and tried to push past Ekriem and run away. Ekriem grabbed her jacket and held on, causing Yoon to fall to the ground. Ekriem then ran away.

Ekriem testified that he approached Yoon to panhandle—hoping she would give him some money. When he reached Yoon, he poked her on the back to get her attention and asked her for some money. He stated he did not have anything in his hands at the time. Ekriem testified that Yoon "freaked out" and began screaming and tried to get away, eventually falling on the ground. Ekriem claimed that he also freaked out and attempted to run away, but was caught and tackled by Yoon's friends until the police arrived.

Yoon's friends testified to seeing Ekriem put his hood on and approach Yoon from behind. One friend testified that he saw Ekriem put his finger into Yoon's back. Two other friends testified they saw Ekriem put his hand on Yoon's back. After Yoon's friends heard Yoon scream, and saw her fall to the ground, they jumped out of the car and chased after Ekriem. One friend tackled Ekriem and the others held Ekriem down until the police arrived.

Ekriem was charged with attempted robbery in the first degree. At trial, Ekriem's primary defense theory was that he had no intention to commit a robbery, but was instead aggressively panhandling. Ekriem argued that because it was late in the evening, Yoon overreacted to Ekriem touching her and that she got tangled up and fell.

The jury found Ekriem guilty of attempted first degree robbery. Ekriem appeals.

## ANALYSIS

Ekriem argues that he was denied the effective assistance of counsel because his counsel failed to object to the definition of attempt in jury instruction 7. Ekriem further argues that defense counsel's error was compounded by counsel's failure to object to the State's explanation of intent during closing argument.[1] We disagree.

Claims for ineffective assistance of counsel present a mixed question of law and fact, and are reviewed de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant has the burden of showing both (1) that defense counsel's conduct fell below an objective standard of reasonableness, and (2) that the deficient conduct prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice exists, where "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." McFarland, 127 Wn.2d at 335. If the defendant fails to demonstrate either prong, our inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

"Courts engage in a strong presumption counsel's representation was effective." McFarland, 127 Wn.2d at 335. When counsel's conduct can be characterized as

---

[1] The State argues that both of these claims are precluded under the invited error doctrine. It is well settled that a defendant will not be allowed to request an instruction or instructions at trial, and then later, on appeal, seek reversal on the basis of claimed error in the instruction or instructions given. State v. Henderson, 114 Wn.2d 867, 868, 792 P.2d 514 (1990). The invited error doctrine, however, does not preclude review of instructional errors that are the result of ineffective assistance of counsel. State v. Kyllo, 166 Wn.2d 856, 861, 215 P.3d 177 (2009).

legitimate trial strategy or tactics, performance is not deficient. Hendrickson, 129 Wn.2d at 77-78.

A.      Jury Instruction 7

Ekriem argues first that his counsel was deficient for failing to object to the State's proposed instruction providing the following definition for an attempt crime:

> A person commits the crime of attempted robbery in the first degree when, with intent to commit that crime, he or she does any act that is a substantial step towards the commission of that crime.

Jury instruction 7. Ekriem maintains the definition was ambiguous, and misstates the law by suggesting "intent to commit an attempted robbery first degree is sufficient for a conviction." Ekriem argues that "[a]lthough it is not clear precisely what intent to commit an attempt means, as a matter of grammar, intent to commit an attempt must be something less than intent to commit a completed robbery."

Were this a case presenting a direct challenge to the instruction, we would need to address whether, on its face, the instruction is ambiguous. The issue before us, however, is limited to whether defense counsel's failure to object to jury instruction 7 fell below an objective standard of reasonableness based on the circumstances of the case. We hold it did not.

First, jury instruction 7 was taken verbatim from Washington Pattern Jury Instruction 100.01, 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 100.01 (4th ed. 2016) (WPIC).[2] As Ekriem concedes, neither party has identified case law questioning the language in WPIC 100.01 either before or

---

[2] WPIC 100.01 states:
A person commits the crime of attempted (fill in crime) when, with intent to commit that crime, he or she does any act that is a substantial step toward the commission of that crime.

-4-

after Ekriem's trial.[3] Ekriem further offers no evidence that defense counsel should have known of any potential ambiguities. Our Supreme Court addressed a similar situation in State v. Studd, 137 Wn.2d 533, 541, 973 P.2d 1049 (1999). One of the defendants in Studd, Daun Bennett, raised an ineffective assistance of counsel claim based on his attorney requesting a standard WPIC instruction that was subsequently found erroneous in another decision.[4] In holding that defense counsel was not ineffective, our Supreme Court stated:

> LeFaber had not been decided at the time of Bennett's trial, so his counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned WPIC 16.02. Thus we do not even reach the second part of the test, where Bennett would have had to also prove that "defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."

Studd, 137 Wn.2d at 551 (quoting McFarland, 127 Wn.2d at 235). We see no reason to conclude differently here.

Ekriem attempts to distinguish Studd by arguing that it involved a "facial" challenge to the instruction, and not a challenge that the instruction was erroneous "as applied." This argument is without merit. Bennett, like Ekriem, also challenged the jury instruction through an ineffective assistance of counsel claim. Thus, the issue in both cases is whether defense counsel was unreasonable in relying on the standard, un-questioned, WPIC. While our Supreme Court has distinguished Studd in situations where, at the time the instruction was offered, there existed case law that "should have

---

[3] See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none").

[4] At issue was the pattern jury instruction for self-defense that the Supreme Court held erroneous in State v. LeFaber, 128 Wn.2d 896, 913 P.2d 369 (1996), abrogated on other grounds by State v. O'Hara, 167 Wn.2d 91, 217 P.3d 756 (2009).

indicated to counsel that the pattern instruction was flawed," this is not the situation here. See State v. Kyllo, 166 Wn.2d 856, 866, 213 P.3d 177 (2009). Ekriem has provided no evidence or argument that his counsel should have known of any ambiguity or that there was case law that questioned the pattern instruction. Thus, as in Studd, Ekriem's counsel was not deficient for failing to object to the pattern jury instruction.

Moreover, even if defense counsel should have known the proposed pattern instruction was ambiguous, any ambiguity was remedied by jury instruction 14, the to-convict instruction, which correctly identified all of the essential elements of attempted first degree robbery:

> To convict the defendant of the crime of attempted robbery in the first degree as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about August 11, 2015, the defendant did an act that was a substantial step toward the commission of robbery in the first degree;
> (2) That the act was done with the intent to commit robbery in the first degree; and
> (3) That the act occurred in the State of Washington.[5]

We review jury instructions "in the context of the instructions as a whole." State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). As a general matter, "'[j]ury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law.'" State v. Mills, 154 Wn.2d 1, 7, 109 P.3d 415 (2005) (quoting State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002)). "The 'to convict' instruction

---

[5] Ekriem concedes the "to convict" instruction correctly states the requisite intent for the crime of attempted robbery.

carries with it a special weight because the jury treats the instruction as a 'yardstick' by which to measure a defendant's guilt or innocence." Mills, 154 Wn.2d at 6.

Read as a whole, the jury instructions properly informed the jury of the applicable law. Even if the jury was confused by the requisite intent in jury instruction 7, the to-convict instruction was complete and unambiguously stated the correct intent. No reasonable juror would read the unambiguous to-convict instruction then decide to look back to a less complete instruction and interpret it to require only that Ekriem intended to commit attempted robbery. See, e.g., State v. McLoyd, 87 Wn. App. 66, 71, 939 P.2d 1255 (1997).[6]

Finally, nothing in the instructions inhibited Ekriem from being able to argue his theory of the case. Ekriem argued throughout trial that he did not have the requisite intent to commit robbery. The defense theory of the case was that Ekriem was a panhandler and Yoon mistakenly assumed he was intending to rob her. The instructions provided the necessary law explaining the requisite intent for finding Ekriem guilty of robbery, and informed the jury they must find this intent "beyond a reasonable doubt." We fail to see how a possible ambiguity in the required intent in jury instruction 7, when read along with the to-convict jury instruction 14, could have undermined the defense's theory of the case.

Defense counsel was not deficient in failing to object to jury instruction 7.

---

[6] In McLoyd, for example, this court concluded, that while the pattern self-defense instruction in WPIC 16.02 was ambiguous, the pattern instruction WPIC 16.07 explicitly informed the jury of the correct law. "Therefore, even if a juror were inclined to believe that actual imminent harm was required after reading WPIC 16.02, no juror could believe this after reading WPIC 16.07". McLoyd, 87 Wn. App at 71.

B.      Closing Argument

Ekriem argues next that he received ineffective assistance of counsel because during closing argument his counsel failed to object to the State's explanation of the requisite intent. Ekriem maintains the State's closing argument contributed to the claimed instructional error by suggesting, improperly, that intent to commit a theft is sufficient to convict for an attempted crime.

The State has "wide latitude in making arguments to the jury." State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006)). "We review allegedly improper comments in the context of the entire argument." Fisher, 165 Wn.2d at 747.

Ekriem specifically cites a small portion of the State's closing argument to argue that the State improperly suggested that intent to commit a theft is sufficient to convict:

> [Ekriem] alleged to have committed the crime of a Robbery and --
> Attempted Robbery because obviously he didn't actually -- he was not
> successful. So Attempted -- or Robbery, itself, is the unlawful <u>with intent to
> commit a theft</u> taking property of another. So you take somebody's stuff
> that isn't yours.
> But it's not just a taking. It's a taking against the person's will or a use or
> threatened use of immediate force.[7]

Because we review allegedly improper comments in the context of the entire argument, however, we considered the State's entire surrounding argument:

> [Ekriem] alleged to have committed the crime of a Robbery and --
> Attempted Robbery because obviously he didn't actually -- he was not
> successful. So Attempted -- or Robbery, itself, is the unlawful with intent to
> commit a theft taking property of another. So you take somebody's stuff
> that isn't yours. <u>But it's not just a taking. It's a taking against the person's
> will of a use or threatened use of immediate force, violence, fear, or injury.</u>
> So against the person's will, obviously they're not willing to give the money

---

[7] (Emphasis added.)

up; with the use or threatened use of immediate force, I've got a gun, that's a threatened use of immediate force or violence or fear. In fact, there was not just a threat of force, there was force. When he grabs her and pulls her, that is actual force. And if there's a threat, it needs to be of immediate force or violence and it may be either express or implied.[8]

Read in context, the State's argument did not misstate the law. Directly after the State informed the jurors that robbery required the "intent to commit a theft," the State continued that the charge also required "taking against the person's will of a use or threatened use of immediate force, violence, fear, or injury." Because the statement was not improper, defense counsel was not deficient for failing to object to it at trial.

Because defense counsel's conduct did not fall below an objective standard of reasonableness, we do not reach whether Ekriem was prejudiced. McFarland, 127 Wn.2d at 335.

Affirmed.[9]

WE CONCUR:

---

[8] (Emphasis added.)
[9] Ekriem asks us to deny appellate costs. We refer the parties to RAP 14.2.